**Lozier Ray PICKERING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58229.**

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 6, 1980.

Rehearing Denied April 9, 1980.

James B. Davis and Kevin J. Hagerty, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Hogan S. Stripling, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for injury to a child. V.T.C.A., Penal Code,

Sec. 22.04. After finding appellant guilty, the jury assessed punishment at 20 years.

In his fourth ground of error, appellant challenges the sufficiency of the evidence to support the conviction. The State relied on circumstantial evidence.

Dr. Walter J. Fagan testified that on the night of October 12, 1976, he was called to Spring Branch Memorial Hospital in Houston. Fagan had received word that a young child had been brought to the emergency room in a state of shock. Fagan stated that after his initial examination of seven-year-old Daniel Brownell, he was of the opinion that the child was suffering from a ruptured spleen. At times, the child did not have a heartbeat.

The child was immediately taken to an operating room for surgery. Fagan stated that upon making an incision, he found the abdominal cavity to be so distorted that the anatomy of the child was almost unrecognizable. This distortion was due to the anatomy being black, gangrenous, and matted down.

Fagan related that these internal injuries had been brought about as a result of the child's colon being perforated in two locations. The contents of the colon had spilled into the abdominal cavity and produced a state of shock in the child. Fagan stated that in his opinion, the colonic injury was three or four days old at the time of the operation.

Fagan testified that as a result of the internal injury, the child had gone into a state of "grim negative shock." The result of this shock was that the child's brain tissue received little blood and he suffered severe brain damage. Due to this brain damage, the child was immobile and no longer able to speak. Fagan stated that the child's condition was permanent.

Fagan testified that in addition to the colonic injury, he observed multiple bruises on the body of the child. These bruises were located on the child's head, back, legs, and buttocks. He stated that the apparent blows which had brought about the bruises on the child's head, legs, and back would not have caused the colonic injury. Furthermore, there was no way to tell if the blows to the buttocks had caused the child's internal injuries. These bruises did not require medical treatment and eventually healed without causing any medical problems.

On the child's lower back, Fagan discovered a series of small circular burns. He stated that he was of the opinion that the burns had been inflicted with a lighted cigarette. As scabs formed over the burns, the letters "i-c-r-y" became apparent. The burns were treated with Merthiolate. There was no evidence that the child would suffer permanent scars or disfigurement as a result of the burns.

Fagan stated that in his opinion, the child's colonic injury had been brought about as a result of an object being inserted into the anus. He noted that it was approximately 18 inches from the child's anus to the location of the perforated colon. Fagan testified that in his opinion, an external blow to the child's abdomen did not bring about the child's internal injuries. Such a blow would have produced bruises and probable rib damage. There were no bruises on the child's abdomen, nor, was there evidence of rib damage.

The doctor testified that severe constipation could cause a ruptured colon. In examining the child, he found no evidence of constipation. Fagan stated that he took a medical history of the child from appellant, the child's stepfather. The doctor learned that when the child came home from school on the afternoon of October 12, he was complaining of a stomachache. At that time, appellant administered an enema to the child. Fagan stated that an ordinary enema would not perforate the colon. He further testified that the bruises which he observed about the anus were not consistent with the giving of an enema "even in inexperienced hands." As noted earlier, Fagan testified that at the time he saw the child, the internal injuries appeared to be three or four days old. He stated that assuming the child's colon had been perforated by the enema administered by appel-

lant, his condition would not have deteriorated so rapidly unless a caustic solution had been used in the enema. There was no evidence that such a solution had been used in the enema. Lastly, Fagan testified that he was of the opinion that the child's internal injury was not the result of an accident.

Officer Wallace Zeringue, of the Houston Police Department, testified that he took a signed written statement from appellant on October 13, 1976. At the time appellant gave the statement, he was belligerent and offensive. The contents of the statement in their entirety are as follows:

" 'My name is Lozier Ray Pickering. I am married to Carolyn Ann Pickering. We got married in Savona, New York, on January 24th, 1976. Carolyn had a seven year old son by the name of Daniel Harold Brownell. I believe it must have been October 5th, 1976, around 4:30 p. m. I had gotten home from work. Daniel was home. We talked. I told him he had a spanking coming and he said, yes, and he laid himself across my lap. I was sitting on his bed. I then started hitting and spanking the boy about his body, hitting him on the forehead. I hit the boy with my hand and he flopped around a great deal. He got the bruise to the forehead when he fell off on the floor, slipping off my lap. I do not recall hitting him in the stomach. If I did, I do not remember. I then told him to get to bed.

" 'When my wife came home, I told her that Daniel was out playing, but she found out he was home. I did not want her to see him in that condition. Daniel vomited a couple of times that night and we gave him Pepto Bismol. Daniel stayed home the next three days from school.

" 'On the weekend, we went to Van Horn, Texas. He said his stomach hurt a little bit. We got back Sunday night and he said his stomach did not hurt him at all.

" 'Tuesday, October 12, 1976, Daniel was home in bed when my wife came home. I walked off the job at 10:30 a. m. and went home and looked after the boy. Later that night, I woke my wife up and told her Daniel was not conscious. Before this, I had given him several glasses of milk and he said his eyes hurt. After this, he passed out. We called the hospital and I drove Daniel to the emergency ward of Spring Branch Hospital.

" 'I have read this statement. It is true and correct.'

"Signed by Lozier Ray Pickering and witnessed by Carolyn Pickering and Officer Zeringue."

Officer D. R. Godinez, of the Houston Police Department, testified that he was assigned to investigate the child's injuries. Godinez related that he questioned appellant concerning the multiple external bruises on the child; appellant responded, "Boys will be boys." Appellant was nervous during this questioning and offered no explanation when asked about the child's internal injuries.

Officer B. R. Prade, of the Houston Police Department, testified that he observed multiple bruises on the child at the hospital. Prade identified several photographs of the child which were taken after surgery.

Louise Goldon testified that she had been the assistant manager at an apartment complex in which appellant and his family lived at the time the child was admitted to the hospital. She identified a photograph of the child before he sustained his injuries. No other witnesses were offered by the State at the guilt or innocence phase of the trial.

Appellant did not testify at trial, nor were any witnesses offered in his behalf.

The indictment in the instant case recited in pertinent part that appellant did:

"intentionally and knowingly cause serious bodily injury to Daniel Brownell, a child under the age of fifteen years."

At the time of this offense, V.T.C.A., Penal Code, Sec. 22.04, provided: [1]

"(a) A person commits an offense if he intentionally, knowingly, recklessly, or

1. Amended by Acts 1979, 66th Leg., p. 365, ch. 162, Sec. 1, eff. Aug. 27, 1979.

with criminal negligence engages in conduct that causes serious bodily injury, serious physical or mental deficiency or impairment, or deformity to a child who is 14 years of age or younger."

V.T.C.A., Penal Code, Sec. 1.07(a)(34), defines "serious bodily injury" in the following manner:

" 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

In the instant case, the bruises about the body of the child would not be classified as a "serious bodily injury." Dr. Fagan testified that the bruises eventually healed without medication and that the blows which inflicted the bruises would not create a future medical problem for the child. It was not shown that the burns on the child's back which formed the letters "i-c-r-y" would create a serious permanent disfigurement for the child. Furthermore, there was no showing that the child's skin would be scarred to the extent that he would suffer the protracted loss or impairment of the function of any bodily member or organ. Thus, the bruises and burns were not serious bodily injuries as that term has been defined in our Penal Code by the Legislature. See, Sanchez v. State, Tex.Cr.App., 543 S.W.2d 132.

Clearly, the "serious bodily injury" suffered by the child in this case was the colonic injury and resulting brain damage brought on by the shock of the injury. Thus, in order to discharge their burden of proof, the State was required to prove beyond a reasonable doubt that appellant was responsible for the child's internal injury.

Appellant's statement was admitted into evidence through the testimony of Officer Zeringue. The statement does not connect appellant with the child's internal injuries. Although it could be assumed that the bruises on the child were the result of the October 5 spanking, we previously held that such bruises were not the manifestations of a "serious bodily injury." Thus, we find that appellant's statement did not constitute even a partial admission to the child's colonic injury. Cf. Williams v. State, Tex. Cr.App., 566 S.W.2d 919; Knight v. State, Tex.Cr.App., 538 S.W.2d 101. The State therefore relied on circumstantial evidence in an effort to prove appellant's guilt.

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant. Schershel v. State, Tex. Cr.App., 575 S.W.2d 548; Bryant v. State, Tex.Cr.App., 574 S.W.2d 109. Thus, proof which amounts only to a strong suspicion or mere probability is insufficient. Ford v. State, Tex.Cr.App., 571 S.W.2d 924. However, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. Earnhart v. State, Tex.Cr.App., 575 S.W.2d 551.

In its brief, the State contends that even if the mother inflicted the colonic injury, appellant is nevertheless guilty because he shared equal care, custody, and control of the child. Although the court charged the jury on the law of parties, the State never sought to prove that the mother of the child had inflicted the injury.

The State relies on Harrington v. State, Tex.Cr.App., 547 S.W.2d 616. That case involved a prosecution of parents for the murder of their child by neglect. The evidence was held sufficient to show that they starved the child to death over a prolonged period of time. The Court held that in a prosecution based upon failure to act over a substantial period of time, the State may prove murder against a parent circumstantially by showing that that parent had a duty of care, custody and control. In such a case, neither of the parents may be heard to argue that because the other parent might have been the one who failed to perform his duty, a reasonable hypothesis other than his guilt therefore exists. Likewise, in Ahearn v. State, Tex.Cr.App., 588 S.W.2d 327, it was found that the parents failed to provide proper food and medical

care over a four and a half month period. Such an omission to perform the parental duties which results in a serious physical deficiency, will constitute injury to a child if the omission was intentional, knowing, reckless, or with criminal negligence.

We find the instant case to be distinguishable from both *Ahearn* and *Harrington*. Central to both of those cases was an omission by a parent to perform a parental duty over a substantial period of time with the child eventually suffering a severe physical injury.

In the instant case, Dr. Fagan testified that the child suffered the colonic injury three or four days prior to the time he was brought to the hospital. Furthermore, the State never sought to show that the mother of the child inflicted the injury and that appellant violated a parental duty by failing to seek out medical attention for the child. The State's theory of prosecution as alleged in the indictment was not an omission or neglect by appellant, but, rather an intentional act in causing a serious bodily injury to the child. As noted above, the "serious bodily injury" proven in this case was the colonic injury and resulting brain damage. Lastly, unlike *Ahearn* and *Harrington*, the State did not even seek to prove that appellant was a parent as that term is defined in the Family Code.[2] The evidence merely showed that appellant was the stepfather of the child. The statutory duties imposed upon a "parent" were critical to the resolution of the sufficiency of the evidence grounds of error in *Ahearn* and *Harrington*.

■ In the instant case, appellant's statement recites that on the weekend prior to the time the child was taken to the hospital, "we went to Van Horn, Texas." This weekend would have been approximately the time Dr. Fagan testified that the child suffered the colonic injury. The statement does not recite who went to Van Horn, who the child was with that weekend, or wheth-

er appellant even stayed in Van Horn with the child. The State made no effort to establish these facts at trial. Assuming that the statement proves that appellant was present with the child at a time consistent with the injury, it is well established that mere presence of an accused at the scene of the offense is not alone sufficient to support a conviction. See, *Johnson v. State,* Tex.Cr.App., 537 S.W.2d 16; *Clayton v. State,* Tex.Cr.App., 493 S.W.2d 526.

Dr. Fagan's testimony established that appellant's acts of spanking the child and administering an enema did not bring about the internal injury. The object which Fagan testified was apparently inserted into the child's anus was never recovered, nor, shown to even exist. Appellant was not shown to have possessed such an object.

■ The evidence as a whole raises a suspicion of appellant's guilt. The law deems such level of proof to be insufficient to support a conviction upon circumstantial evidence. Despite the heinous facts in the record before us we cannot uphold a conviction upon less proof than the law requires. We hold the evidence to be insufficient to support appellant's conviction.

■ In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, the United States Supreme Court by opinion of June 14, 1978, held that the "Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient . . . ." In *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15, handed down the same day as the *Burks* decision, the Supreme Court held, "Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton v. Maryland* [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)], we are bound to apply the standard announced in *Burks* to the case now under review."

---

**2.** V.T.C.A., Family Code, Sec. 11.01(3) provides:

" 'Parent' means the mother, a man as to whom the child is legitimate, or an adoptive

mother or father, but does not include a parent as to whom the parent-child relationship has been terminated."

Having found that reversal must result in the instant case since we concluded that the evidence is insufficient to support the conviction, the Supreme Court's decisions in *Burks v. United States*, supra, and *Greene v. Massey*, supra, dictate that no further prosecution be had in this cause.

The judgment of conviction is set aside and is reformed to show an acquittal.