Jimmy Mack SHORT, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–81–0912–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 1, 1983.

Stanley G. McGee, Houston, for appellant.

Jim Mapel, Angleton, for appellee.

Before JACK SMITH, BASS and COHEN, JJ.

### OPINION

JACK SMITH, Justice.

Jimmy Mack Short was indicted for the offense of injury to a child. At trial, the jury found him guilty and assessed his punishment at eleven years confinement. On appeal, he raises seven grounds of error.

The complainant, Kenneth Alan Abel, is four years old. On April 23, 1981, he was taken to Alvin Community Hospital where the doctor recommended that he be transferred to John Sealy Hospital in Galveston. At John Sealy, he underwent pedatric surgery for a rectal tear. The injury and resulting infection required that a colostomy be performed. In June, 1981, the appellant was arrested for inflicting Kenneth's injuries and charged with the offense of injury of a child.

At the trial, Josie Martinez testified that she babysat for Kenneth in the early evening on April 22, 1981. She said that she noticed that Kenneth appeared to be in pain and had difficulty walking. He was feverish and cried because he could not use the restroom. She and several family members observed large bruises and swelling around Kenneth's penis and in his groin area.

Deborah Sanchez and her parents were present with Josie when she babysat Kenneth. They corroborated Josie's testimony and further stated that Kenneth told them that "his daddy" hit him.

Mary Lou Moreno, who lived next door to Kenneth and his family and normally babysat for Kenneth, testified that she saw Kenneth at 4:00 P.M. on the day before he went to the hospital. She stated that Kenneth was walking very slowly and could hardly move. Ms. Moreno had observed bruises on Kenneth on previous occasions.

Margo Green, a child welfare worker, testified that she received a Priority I request to investigate a child abuse allegation on April 23, 1981. When Ms. Green went to the home of Lillian Cameron and the appellant to investigate the allegation of abuse to Kenneth, Ms. Cameron became extremely upset when informed of the purpose of the visit.

Ms. Green stated that when Kenneth's mother picked him up, he began to cry and appeared to be in very severe pain. She stated that when his mother pulled his shorts down to show her the injuries that Kenneth very nearly collapsed from pain. Ms. Green observed that one of Kenneth's testicles was two or three times larger than the other. She said she asked the appellant what he had to say about this and he answered, "I don't have anything to say." Ms. Green also stated that she observed several bruises and abrasions on Kenneth's chin, head and neck.

When Ms. Green suggested to Ms. Cameron that Kenneth should be taken to the hospital because of his injury, an argument ensued. Ms. Green finally issued an ultimatum to Ms. Cameron, stating, "Either you take the child, or I will." Because of the disagreement, Ms. Green had a deputy sheriff follow Ms. Cameron and the appellant to the hospital.

After examining Kenneth, the doctors at Alvin Community Hospital, recommended that he be transferred to the John Sealy Hospital in Galveston. Ms. Green ordered an ambulance because she feared that Ms. Cameron and the appellant would not take Kenneth to John Sealy. Over objection, Ms. Green testified that the appellant told her that both he and Ms. Cameron "whipped the children" on occasion.

Eugene Lyons, a fifteen year old neighbor, testified that he had played with Kenneth in the past but he never kicked or hit him. He said he threw rocks at Kenneth and other kids when they threw rocks at him. He stated that he played touch football with younger children but Kenneth did not play touch football. He stated several times that he never kicked or hit Kenneth

or any other child. He also testified that he had seen Kenneth and another child about Kenneth's age get into a fight.

Three doctors testified for the State regarding the extent, severity and treatment of Kenneth's injuries. His injury was diagnosed as a rectal tear which had abcessed causing an infection. Immediate surgery, including a colostomy, was performed by the doctors. The doctors testified that the injury was caused by a traumatic perforation of the rectum and colon. In their opinion, the injury was non-accidental and was inconsistent with the insertion of a rectal thermometer or a kick in the buttocks.

Kenneth's mother, Ms. Cameron, testified for both the State and the appellant. When testifying for the State, she stated that she gave Kenneth a bath on the evening of April 21, 1981. At that time, she did not notice any bruises on his buttocks or groin. The following morning at approximately 10:00 A.M., the appellant drove Ms. Cameron to work. Kenneth was with them and appeared to be normal and healthy. While Ms. Cameron was at work, the appellant babysat for Kenneth and his brother.

That afternoon, when the appellant picked up Ms. Cameron from work, Kenneth was in the car and Ms. Cameron noticed that he had trouble walking and sitting. She stated that he had a large bruise in the middle of his buttocks and complained several times that his bottom hurt. She said that when she asked the appellant what was wrong with her son, he stated Kenneth came home complaining that his bottom hurt. He said that he looked at it and couldn't see anything wrong, but he had given Kenneth medicine for the pain. Ms. Cameron further testified that she saw a red mark across the middle of Kenneth's buttocks which looked as though Kenneth had been kicked. She stated that when they took Kenneth to the hospital Kenneth told her that Eugene Lyons "kicked him in the butt". She said she believed this because Eugene "picked on Kenneth" and she had had trouble in the past with Eugene.

Ms. Cameron testified that she did not believe that the appellant had hurt Kenneth because he was a good provider and had always been good to her children. She said that he took care of the kids on his day off and was always buying them new clothes or toys.

On cross-examination Ms. Cameron stated that she continued to question Kenneth regarding his injuries at the insistence of the child welfare agency. She said she feared the agency would take her children away. At one time when she questioned Kenneth, he stated that his daddy put three fingers "in my butt". On other occasions he continued to state that Eugene Lyons kicked him.

Ms. Cameron further testified that her children had been taken away from her once before because the appellant had accidently broken Kenneth's leg. She explained that Kenneth had been climbing over the seats in the family car and his leg got stuck between the seats. When the appellant pulled Kenneth to get him loose, Kenneth's leg broke. Once the appellant had been absolved of charges of abuse, Kenneth and his brother were returned to Ms. Cameron.

Ms. Cameron stated that she and the appellant had arguments because she believed that the appellant disciplined the children too harshly. She stated that Kenneth told her that "his daddy choked him" on the day that he received the rectal injury.

When called by the defense as a witness, Ms. Cameron stated that the story most consistently reiterated by her son was that Eugene Lyons kicked him. She stated that the appellant acted as a normal father when he visited Kenneth at the hospital. On cross-examination, Ms. Cameron stated that since Kenneth was not ill before his injury, there was no occasion for the appellant to take the child's temperature with a rectal thermometer or to insert a suppository into the child's rectum.

The Court changed its earlier ruling that Kenneth was not competent to testify and permitted him to testify as the Court's wit-

ness. Kenneth told counsel that he was four years old and lived with his mommy. He did not know his address, but knew that it was bad to tell a lie. He said his mommy spanked him if he told a lie. He stated that his "butt" was where his mommy spanked him and that his "butt" had been hurt. When asked what happened to his butt, Kenneth first stated that he didn't remember, but then stated that Eugene "stuck the spoon in there". He did not know when or where this happened but that Eugene pulled his pants down and "stuck a spoon there". He said that this occurred in the trailer park where he lived.

Kenneth stated that his daddy had choked him with a towel. He said his daddy did not hurt his butt and did not stick his finger there. He also said that he did not tell his mommy or his daddy that Eugene kicked him or what Eugene did to him.

In rebuttal, the State called a deputy sheriff who had guarded the appellant. When asked whether the appellant and Ms. Cameron had ever discussed the case in his presence, the deputy stated that they talked about the sentence and some plea bargaining. This line of questioning ended when the appellant's counsel objected to the introduction of evidence of plea bargaining and the objection was sustained.

The appellant contends, in his first ground of error, that the court erred in admitting evidence of extraneous offenses. He specifically complains of the testimony that Kenneth's forehead and cheeks were bruised. He argues that the bruises did not constitute serious bodily injury and were not an element of the offense of which the appellant was charged.

■ The general rule is that an accused is entitled to be tried on the accusation made in the State's pleading and that the accused should not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr. App.1972).

We first note that although witnesses testified to seeing bruises on Kenneth, none of the witnesses knew if the appellant had

caused the bruises, and none of the witnesses offered an opinion.

■ The evidence that the babysitters observed bruises on Kenneth's forehead, chin and neck was admissible because it bears on the injured condition of Kenneth as observed by those witnesses. Evidence of the bruises observed prior to the injury in the instant case was never attributed to the appellant. In fact, the witness who had observed the prior bruises stated that the appellant was friendly and appeared to treat the children very well.

Most of the cases where the Court of Criminal Appeals has held that evidence of extraneous offenses is inadmissible have involved testimony that an appellant had previously been involved in some other crime or criminal activity. *See, Albrecht, supra; Young v. State,* 159 Tex.Cr.R. 164, 261 S.W.2d 836 (Tex.Cr.App.1953); *Prior v. State,* 647 S.W.2d 956 (Tex.Cr.App.1983) (not yet reported). These cases are distinguishable from the instant case in that the testimony in the present case does not assert that the appellant committed an extraneous offense. As there is no testimony which establishes a causal relationship between the bruises and the appellant and no witness testified that they were of the opinion that appellant caused those injuries, the appellant's first ground of error is overruled.

In his second ground of error, the appellant asserts that the court erred in admitting the testimony of the statements made by Kenneth to the babysitter. He argues that the statements are hearsay and not within an exception to the hearsay rule.

■ The State urges that these statements are admissible as the spontaneous reaction to the pain and suffering of the victim. This statement was made to the babysitter when she was examining Kenneth after he had been crying because he could not use the bathroom or eat.

The requirements of a spontaneous utterance are:
(1) An exciting, emotionally stimulating, or physically painful event.

(2) The assertion must be made soon after the event so that the declarant is still in its emotional grip.

(3) The assertion must relate to the event.

*Graham v. State*, 486 S.W.2d 92 (Tex.Cr. App.1972).

Although the time element is important in determining admissibility of an utterance, it is not the controlling factor. The paramount factor is whether the person who made the statement is still dominated by the emotions instigated by the happening of the principle event. *Fisk v. State*, 432 S.W.2d 912 (Tex.Cr.App.1969).

In the instant case, the time of the injury was between 10:00 A.M. and 2:00 P.M. on April 22. The statement was made to the babysitter after 6:30 P.M., the same day. The child was extremely young, seriously injured, and in extreme pain when the statement was made. Under these circumstances, it appears probable that the child was still dominated by the emotions instigated by the infliction of the injury.

Additionally, even if the statement does not fall within an exception to the hearsay rule, since the appellant elicited the same evidence from Kenneth's mother, the prior statement by the child appears to be harmless. The appellant's second ground of error is overruled.

By his third ground of error, the appellant contends that the trial court erred in admitting color slides of the victim which showed the injury and the surgical procedures taken to correct it. He asserts that these pictures inflamed the passion of the jury and prejudiced him in their eyes.

The slides alluded to are not included in the appellate record and the appellant did not object to their deletion. There is nothing for this court to review. Appellate courts will generally not consider arguments in a brief which refer to items not included in the record. *Robertson v. State*, 322 S.W.2d 620 (Tex.Cr.App.1959). The appellant's third ground of error is overruled.

By his fourth ground of error, the appellant asserts that the trial court erred in

entering judgment against him because the evidence was circumstantial and does not exclude every reasonable hypothesis except that of appellant's guilt. The reasonable hypothesis offered by appellant was that Eugene Lyons had injured Kenneth.

The sufficiency of the evidence is to be viewed in light of the presumption that the accused is innocent where the conviction is based on circumstantial evidence. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr. App.1983) (not yet reported); *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983) (not yet reported). Although the appellate court must review the evidence in light of the presumption of innocence, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Therefore, the jury may accept or reject the testimony of any witness. *Johnson v. State*, 571 S.W.2d 170 (Tex.Cr. App.1978).

In the instant case the evidence reflects that Kenneth was healthy and uninjured until he was left with the appellant at 10:00 A.M. on April 22. He stayed with the appellant until 2:00 P.M. that day, after which time his mother observed a bruise across the middle of his buttocks. His mother also noticed that Kenneth experienced discomfort in sitting and walking and heard him complain that his "bottom" hurt.

The babysitter and her family noticed bruises on the child on the evening of April 22. Upon examining him they found his genitals to be swollen. They also heard Kenneth cry when he could not eat or go to the bathroom. They further testified that he was feverish. When they questioned him as to how he was hurt, he replied that his daddy had hit him.

On the day Kenneth was injured, the appellant did not volunteer any information. On the following day when the welfare worker asked the appellant what he had to say about Kenneth's injuries, he answered, "I don't have anything to say". The appellant did not tell anyone that Kenneth had accused Eugene Lyons of kicking

him until after Kenneth was admitted to the hospital for treatment.

On the date of his injury, Kenneth blamed his stepfather. Although he later said that Eugene kicked him, medical testimony showed that Kenneth's injury was not consistent with being kicked but was caused by the insertion of a blunt object. His mother testified that Kenneth told her that his daddy put three fingers in his "butt". In response to appellant's counsel's question, Kenneth's mother testified that the appellant had previously broken Kenneth's leg. She also testified that she and the appellant argued because the appellant disciplined the children too roughly.

Kenneth testified that Eugene put a spoon in his "butt"; however, we note that this testimony came as a result of a statement which Kenneth reportedly made to his mother after doctors had testified that Kenneth's injury was inconsistent with his having been kicked. Finally, Eugene Lyons testified twice that he did not kick Kenneth or insert a spoon into Kenneth's rectum.

The appellant cites *Pickering v. State,* 596 S.W.2d 124 (Tex.Cr.App.1980), to support his contention that the evidence in the instant case is insufficient. Aside from the similarity of the injuries, the facts of *Pickering* are distinguishable from the facts of the instant case. In *Pickering,* the State failed to show who the victim was with at the time of injury and when the injury occurred. In the instant case, the State showed that Kenneth was uninjured before he was left with the appellant between 10:00 A.M. and 2:00 P.M. on April 22. After 2:00 P.M., when his mother saw him, Kenneth was showing signs of the injury which continued to get worse until he was taken to the hospital.

When the circumstances surrounding the injury are considered in their totality, we hold that the State's evidence was sufficient to sustain the appellant's conviction. The appellant's fourth ground of error is overruled.

The appellant contends, by his fifth ground of error, that the trial court erred in refusing to grant a mistrial when a witness testified that he heard the appellant and Ms. Cameron talk about plea bargaining. In support of this contention, the appellant cites *U.S. v. Ross,* 493 F.2d 771 (5th Cir. 1974). In *Ross,* a government agent testified that the accused tried to arrange a plea bargain whereby he would admit everything if the government released his wife. The agent further stated that he had discussed this offer with the prosecutor. The Fifth Circuit reversed the case stating that it was inherently unfair for the government to engage in plea bargain negotiations only to use it as a weapon against the defendant when negotiations failed. *Id.* at 775.

In the present case, discussion of the plea bargain was between the appellant and Ms. Cameron. The statement by the witness was a non-responsive answer and the appellant's objection was sustained and the jury was instructed to disregard it. There is nothing in the record to indicate that the State was even aware of this conversation prior to the witness's non-responsive answer. The State had called this witness as a rebuttal witness to Kenneth's testimony that he did not discuss the case with his parents.

Since the State did not elicit the testimony complained of, and there is no other evidence of plea bargaining, the court's instruction to the jury to disregard the testimony was proper. In view of the court's immediate instruction to the jury, we are of the opinion that the witness's non-responsive answer was not so harmful or prejudicial to the defendant as to require a new trial. The appellant's fifth ground of error is overruled.

The appellant's sixth ground of error alleges that there is a fatal variance between the pleadings and the proof and he is entitled to acquittal. The alleged variance is that the indictment alleges the rectal tear caused an "abscess and infection" whereas the doctor testified that the infection preceded the abscess by a few hours.

A fatal variance is one which affects the substantial rights of the accused

either by insufficiently informing him of the charges against him or by affording him insufficient protection against reprosecution. *Plessinger v. State,* 536 S.W.2d 380 (Tex.Cr.App.1976). The fact that the indictment read "infection and abscess" rather than "abscess and infection", as established by the doctor, did not affect the substantial rights of the appellant. The indictment sufficiently informed the appellant of the charges against him, and the elements and facts required to be proved in each of the statements are the same. The appellant's sixth ground of error is overruled.

By his final ground of error, the appellant alleges that the trial court erred in failing to sustain his objection to statements by the prosecutor in final arguments. He asserts that the arguments were comments upon the appellant's failure to testify. The first comment about which the appellant complains is:

MR. DIES: "I don't have anything to say". A father who truly and really loves or even an adult who truly and really loves a little boy that's living with, knows for a fact that another child stuck a spoon up his butt is not going to tell somebody who is there to take the child away, "I have nothing to say". And you know that. Gosh, common sense tells you that. And I didn't have to tell you that before you got here, but I've got to argue it like a silly fool.

\* \* \* \* \* \*

Eugene Lyons, 14-year old sexual pervert. Eugene Lyons kicked him in the butt. Come on now. Does that make sense? Does it all fit? An it's from his mouth. Does it fit? If Eugene Lyons had stuck a spoon up his butt at that point in time knowing the consequences don't you think he would have told Thacker that? And I didn't ask for that comment. That's strong evidence, ladies and gentlemen. That's strong evidence. And *that's factual circumstances that has not been contradicted or controverted by any witness I called.* [emphasis added]

MR. RICE: Your Honor, that's a comment on the defendant's failure to testify and he has a right not to testify.

THE COURT: I will overrule that objection. Go ahead, Counsel.

▮▮▮ An indirect statement does not infringe upon a defendant's right not to testify unless a necessary implication from the language used, when viewed from the standpoint of a jury, is a comment on the accused's failure to testify. *Hicks v. State,* 525 S.W.2d 177 (Tex.Cr.App.1975). The prosecutor's arguments shown above refer to testimony elicited from the State's witnesses. His remarks appear to be a reference to the consistency of the testimony of the State's witnesses, and at most are an indirect comment upon appellant's failure to testify. We are of the opinion that, viewed from the standpoint of the jury, the prosecutor's statements were not a comment upon the accused's failure to testify.

▮▮▮ The appellant next complains of the following argument by the prosecutor:

MR. DIES: I'm going to sit down and shut up in just a few minutes. Common sense tells you that this kind of crime, injury to a child, doesn't occur with alot of people watching, witnessing it. You know that. I didn't have to tell you that before you got here. Common sense tells you that that kind of a crime, that kind of a criminal act, is going to occur in some private area. And I submit to you that in this particular instance the facts indicate that it was within the private confines of the home under the custody and control of Jimmy Mack Short, the defendant. *And common sense tells you that there's only two witnesses, and we've heard what one of them told everybody.* [emphasis added]

MR. RICE: Your Honor, I will have to object. That's a comment on the defendant's right not to testify.

THE COURT: Objection overruled.

The test to be employed in interpreting the prosecutor's remarks is whether the language used was manifestly intended or was of such character that the jury would necessarily take it as a comment on the accused's

failure to testify. *Bird v. State,* 527 S.W.2d 891 (Tex.Cr.App.1975). At trial, several witnesses testified as to Kenneth's remarks concerning his injury, but Kenneth's testimony did not implicate the appellant. Therefore, the prosecutor's argument did not necessarily imply that the appellant was the only person who could deny the charge. We note that the trial judge instructed the jury that they were not to consider the appellant's failure to testify for any purpose. We further note that the appellant referred to the State's failure to investigate other suspects, referred to the State's lack of witnesses, and also referred to Kenneth's mother as a suspect. Under these circumstances we are of the opinion that the prosecutor's remarks about two witnesses was a response to the defendant's argument and was not a comment on the defendant's failure to testify. *See, Nickens v. State,* 604 S.W.2d 101 (Tex.Cr.App.1980, *en banc*).

The appellant's seventh ground of error is overruled and the judgment of the trial court is affirmed.

COHEN, Justice, concurring.

I reluctantly join the court's disposition of the appellant's final ground of error complaining that the prosecutor's jury argument constituted an improper comment on the failure of the accused to testify. I believe such action is required by the majority opinion in *Nickens v. State,* 604 S.W.2d 101 (Tex.Cr.App.1980, *en banc*). Although I believe the prosecutor's argument in this case is slightly more specific in calling the jury's attention to the failure of the accused to testify than was the prosecutor's argument in *Nickens, supra,* I cannot say that the difference is great enough to distinguish the two cases. If we were writing on a clean slate, I would be inclined to hold as did the three dissenters in *Nickens;* however, the law is to the contrary and I am bound to follow it.

I concur in the affirmance of the judgment.