TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00302-CR







Larry Keller, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0975030, HONORABLE BOB PERKINS, JUDGE PRESIDING







 After convicting appellant of the offense of serious bodily injury to a child, (1) the jury
assessed punishment, enhanced by prior felony convictions, at confinement for fifty-five years. 
Appellant asserts three points of error, contending that error occurred in the trial court because: 
(1) the evidence was legally and factually insufficient to support the jury's finding that appellant
caused serious bodily injury to the victim; (2) the evidence was legally and factually insufficient
to support the jury's verdict that appellant intentionally or knowingly injured the victim; and (3)
the trial court erred in admitting the testimony of a witness regarding hearsay statements of an
infant child. We will affirm.

 During the early afternoon hours of September 22, 1997, appellant entered the
Kid's Playhouse daycare center in Austin. Mary Murray, the only employee present at that time,
described the events that ensued. Appellant reached into a bag containing a six-pack of beer and
removed a knife which he pointed at Murray and stated, "I won't hurt you," and instructed her
to "call the police." Pursuant to appellant's request, Murray dialed 911 and advised the operator
that she "had an emergency, there was a man holding a knife to [Murray] and he told [Murray]
to call them." Cassandra Baker, a three and one-half-year-old girl, and Addison De La Noval,
a twenty-three-month-old boy, were under Murray's care at the time.

 After Murray made the call, appellant walked across the room "three quarters of
the way closer to the children," placed the bag on the floor and lit a cigarette. When the police
arrived, appellant said, "Tell them not to come in or I will hurt somebody--Tell them not to come
in or somebody is going to die." When an officer entered the door, appellant grabbed Addison. 
Murray heard an officer say, "Drop it. I said drop it." Shots were then fired from inside and
outside the building. Murray stated that appellant had the knife in his hand at all times, but she
was unable to see where it was positioned prior to the shots.

 Austin police officer Ron Hyatt reached the Kid's Playhouse approximately three
minutes after receiving a radio dispatch to proceed to this location. Officer Jose Leija and another
officer riding with him reached the scene at the same time. Hyatt entered the daycare center,
observed the person in charge on the desk still talking to the 911 operator and saw appellant and
two "toddlers" toward the rear of the building. Appellant had "like a large butcher knife in his
hand." After Hyatt told appellant to drop the knife, he saw appellant holding Addison "around
the waist with his left arm and the knife--to the young boy's throat." Hyatt testified that after
telling appellant to drop the knife "three, maybe four times," he saw appellant make a movement
Hyatt interpreted as "about to make a slashing motion with the knife." Fearing that the child was
in danger, Hyatt fired his weapon over appellant's head. When appellant did not respond to
Hyatt's subsequent request to drop the knife, Hyatt fired a second shot that struck appellant. 
Officer Leija, who was outside the building, immediately fired two shots through a window. It
appears undisputed that the shattered glass did not cause the injury to the victim's neck. Leija
testified that he was in a position to observe appellant. Believing that appellant was about to harm
the child, Leija fired two shots. Appellant was handcuffed and the victim was taken to Murray. 
Neither Hyatt nor Leija saw appellant cut the victim's neck.

 Manuela Baker testified that she arrived at the daycare center to pick up her
daughter Cassandra at the time that the police patrol cars were arriving at the scene. Following
the shooting, an officer brought Cassandra to her. Baker described Cassandra as being in an
emotional state. Cassandra told her mother, "Don't cry, mommy, I'm here. The boy got cut. 
He's bleeding and he is dead. Mom, the man got the boy, cut his neck and killed the boy."

 Dr. Robert Schlechter, pediatric surgeon at Children's Hospital, testified that he
is on call for significant injuries to children less than fifteen years of age. He found the victim's
injury serious enough to require evaluation in the operating room. Examination revealed that had
the cut gone a millimeter deeper, injury would have resulted to the carotid artery or jugular vein
creating a substantial risk of death. Dr. Schlechter opined that the laceration, eight centimeters
in length, would leave a permanent scar; "Time will tell how severe it will be and what revision
will be necessary or appropriate--plastic surgery might make it thinner and less noticeable, but
there will always be a scar." At the time of trial, Dr. Schlechter had not seen the victim in
"awhile" and did not know what the scar looked like. Beverly De La Noval, mother of the victim,
testified that as her son had started to grow the scar had gotten wider, the front part is "real red
and looks kind of like a burn--toward the back by his ear it's not as red." De La Noval identified
two recent photographs of her son's scar that appears to extend across one side of the child's neck.

 Appellant's challenge to the legal and factual sufficiency of the evidence in his first
point of error is based on his contention that the victim's injury does not rise to the level of serious
bodily injury. "'Serious bodily injury' means bodily injury that creates a substantial risk of death
or causes death, serious permanent disfigurement, or protracted loss or impairment of the function
of any bodily member or organ." Tex. Penal Code Ann. § 7(a)(46) (West 1994).

 In reviewing the legal sufficiency of the evidence, we must determine whether,
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979). Under the Jackson standard, the reviewing court is not to position
itself as a thirteenth juror in assessing the evidence, nor is it the court's place to second guess the
determination made by the trier of fact. See Collins v. State, 800 S.W.2d 267, 269 (Tex.
App.--Houston [14th Dist.] 1990, no pet.). The trier of fact (the jury in this cause) is in a better
place than an appellate court to weigh, accept, or reject all or any portion of any witness's
testimony. It is the duty of this Court to determine if the explicit and implicit findings by the trier
of fact are rational under legal standards to support the conviction. See Adelman v. State, 828
S.W.2d 418, 422 (Tex. Crim. App. 1992).

 On appellate review, we may consider factual sufficiency as well as legal
sufficiency. See Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref'd untimely
filed); see also Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (adopting Stone
test). In Stone, this Court set the following standard for factual review:


[T]he court reviews all the evidence without the prism of "in the light most
favorable to the prosecution." Because the court is not bound to view the evidence
in the light favorable to the prosecution, it may consider the testimony of defense
witnesses and the existence of alternative hypotheses. The court should set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.



Stone, 823 S.W.2d at 381 (citations omitted).

 The issue is whether the injuries caused "serious permanent disfigurement" to the
victim. Appellant suggests that the State offered photographs of the victim's lacerations before
treatment by Dr. Schlechter because of the shocking nature of these photographs. Appellant's
argument overlooks authority that "[t]he relevant issue was the disfiguring and impairing quality
of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated
by other actions such as medical treatment." Brown v. State, 605 S.W.2d 572, 575 (Tex. Crim.
App. 1980); see Moore v. State, 802 S.W.2d 367, 370 (Tex. App.--Dallas 1990, pet. ref'd) (blow
to victim's face caused serious and permanent disfigurement at the time; fact that victim had access
to plastic surgery to cure disfigurement "has no bearing on whether the injury constituted 'serious
bodily injury.'" In the instant cause, Dr. Schlechter stated that he "closed the platysmal muscle
over the wound in order to keep the muscle from stretching on the skin incision, which will give
you a thinner scar, then I closed the skin." While Dr. Schlechter stated that plastic surgery might
make the scar "thinner and less noticeable--there will always be a scar."

 Pickering v. State, 596 S.W.2d 124, 128 (Tex. Crim. App. 1980), cited by
appellant, held that letters burned on the victim's back were not shown to "create a serious
permanent disfigurement." In the instant cause, the scar, eight centimeters in length, appears to
extend across one side of the victim's neck. We believe a scar on the neck or the face of a person
where is it always visible creates a more serious disfigurement that one that is normally hidden
by clothing. The victim's mother noted that the scar had gotten wider with the growth of the child
in the months since the injury was inflicted.

 Viewing the evidence in the light most favorable to the verdict, we hold that any
rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt.

 Our analysis of appellant's factual challenge to the sufficiency of the evidence
includes a review of Dr. Schlechter's testimony relative to the victim's wound. After reviewing
all of the evidence and the arguments and the existence of alternative hypotheses, we conclude that
the verdict is not so contrary to the overwhelming weight of the evidence to be clearly wrong and
unjust. Appellant's first point of error is overruled.

 In his second point of error, appellant contends that the evidence was legally and
factually insufficient to support the jury's verdict that appellant intentionally or knowingly injured
the victim. Appellant urges that the evidence does not support the jury's verdict that he acted with
a conscious desire to injure the victim, nor that he was aware that his conduct was reasonably
certain to cause the injury suffered by the victim. See Tex. Penal Code Ann. § 603(a), (b) (West
1997). Appellant directs our attention to evidence showing that he did not threaten Murray, that
he told her to call the police, and that his actions were not threatening to either of the children
until the police arrived. He also notes that neither the officers nor Murray saw appellant cut the
victim's neck.

 Murray described how appellant pulled a knife from a bag and pointed it toward
her. The knife, eight inches in length, was shown by expert testimony to be a deadly weapon. 
While appellant told Murray he would not hurt her, Murray testified that he shook the knife at her. 
Upon the arrival of the officers, appellant told Murray: "Tell them not to come in or somebody
is going to die." The laceration to the victim's neck came within a millimeter of injuring an artery
that would have resulted in substantial risk of death. Manuela Baker testified that when her child
was brought from the building by the officer, Cassandra told her that the man got the boy, cut his
neck, and killed the boy.

 Intent can be inferred from the acts, words, and conduct of the accused. See
Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). It may also be inferred from the
extent of the injuries and the relative strength of the parties. Id. The jury may infer the intent to
kill from the use of a deadly weapon unless it would not be reasonable to infer that death or
serious bodily injury could result from the use of the weapon. See Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996).

 The requisite intent could be inferred by any rational jury from several items of
evidence. Appellant exhibited a deadly weapon after entering the daycare center. The injury
inflicted on the victim came within a millimeter of creating a substantial risk of death. While
appellant was a grown man, the victim was only 23 months old. Appellant threatened that
someone would die if the police entered the building. All of these circumstances could have been
found by a rational trier of fact to prove beyond a reasonable doubt the intent to bring about
serious bodily injury to the victim.

 Being mindful of appellant's challenge to the factual sufficiency of the evidence,
we have attempted to set out evidence appellant urges to be favorable to his position. After
reviewing all of the evidence and the arguments and the existence of alternative hypotheses, we
conclude that the verdict is not so contrary to the overwhelming weight of the evidence to be
clearly wrong and unjust. Appellant's second point of error is overruled.

 In this third point of error, appellant contends that the trial court erred by admitting
the hearsay statement of the infant child, Cassandra Baker. The trial court admitted the testimony
of Manuela Baker regarding what her three and one-half-year-old daughter told her when she was
brought by an officer to her following the knife inflicted injury to the victim. As heretofore noted,
Cassandra told her mother that appellant cut the boy's neck and killed him.

 The trial court admitted the testimony under the present sense impression exception
to the hearsay rule. See Tex. R. Evid. 803(1). Appellant appears to concede that Baker's
testimony comes within this exception, but urges that the trial court erred in overruling his
objection that the trial court had failed to determine that the child was competent to possess
sufficient intellect to relate transactions. See Tex. R. Evid. 601(a)(2). Ortega v. State, 500
S.W.2d 816, 817 (Tex. Crim. App. 1973), rejected a similar argument, stating: "We will
reaffirm our prior holdings that spontaneous declarations of children may be received in evidence
even though such children are not competent to testify." Ortega expressly overruled previous
decisions that had stated it must be shown that the child is of sufficient age and intelligence to
render his declarations reliable. Id. The theory on which this principle is based is that
declarations derive their credibility from the stress of the circumstances under which they were
made, instead of the trustworthiness of the person who made them. See 24 Tex. Jur. 3d Criminal
Law § 3112 (1982). Appellant's third point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Kidd, Patterson and Davis*

Affirmed

Filed: June 10, 1999

Do Not Publish









* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. See Tex. Penal Code Ann. § 22.04(a)(1) (West 1994).



e boy.

 Intent can be inferred from the acts, words, and conduct of the accused. See
Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). It may also be inferred from the
extent of the injuries and the relative strength of the parties. Id. The jury may infer the intent to
kill from the use of a deadly weapon unless it would not be reasonable to infer that death or
serious bodily injury could result from the use of the weapon. See Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996).

 The requisite intent could be inferred by any rational jury from several items of
evidence. Appellant exhibited a deadly weapon after entering the daycare center. The inj