NO. 07-01-0367-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



DECEMBER 12, 2002



______________________________




JOSE S. GONZALES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-436732; HONORABLE CECIL G. PURYEAR, JUDGE



_______________________________



Before REAVIS and JOHNSON, JJ., and BOYD, SJ. (1)

 In a single issue, appellant Jose S. Gonzales challenges his conviction by a jury of
aggravated assault with a deadly weapon and the resulting punishment, assessed by the
trial court, of 35 years confinement in the Institutional Division of the Department of
Criminal Justice. We affirm the judgment of the trial court.

 In his issue, appellant argues the evidence is factually insufficient to support the jury
finding concerning appellant's use of a deadly weapon in committing the assault. More
precisely, the question presented in this appeal is whether a beer bottle was used by
appellant in such a manner that it was capable of causing death or serious bodily injury,
thus meeting one of the essential elements of the offense of aggravated assault. 

 When reviewing a factual sufficiency challenge, we must neutrally examine all of the
evidence and determine whether it is so weak as to be clearly wrong and manifestly unjust
or the adverse finding is against the great weight and preponderance of the evidence. 
Johnson v. State, 23 S.W.3d 1,11 (Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126,
135 (Tex.Crim.App. 1996). As relevant here, a person commits the offense of aggravated
assault if he commits an assault as defined in section 22.01 of the Penal Code, and he
uses or exhibits a deadly weapon during the course of the assault. Tex. Pen. Code Ann.
§ 22.02(a)(2) (Vernon 1994). Thus, in this case, the use or exhibition of a deadly weapon
is an essential element of the offense of aggravated assault. A deadly weapon is "anything
that in the manner of its use or intended use is capable of causing death or serious bodily
injury." Id. § 1.07(17)(B). The Code goes on to define serious bodily injury as "bodily injury
that creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily member or
organ." Id. § 1.07(46).

 In relevant part, the indictment charged that appellant "did then and there 
intentionally, knowingly, and recklessly cause bodily injury to SOPHIA GARCIA, by striking
the said SOPHIA GARCIA with a hard object, the exact nature of which is unknown to the
Grand Jury, and did then and there use a deadly weapon, to-wit: a hard object, the exact
nature of which is unknown to the Grand Jury, that in the manner of its use and intended
use was capable of causing death and serious bodily injury."

 The incident giving rise to this prosecution occurred on November 25, 2000. On that
date, appellant and Sophia Garcia, his girlfriend at the time, were by themselves at the
home of appellant's brother. They were, and had been, drinking alcohol since early that
morning. They began to argue, and the argument escalated into a physical confrontation. 
According to Sophia, appellant began hitting her with his fist hard enough to cause bruises. 
At some point during the fracas, appellant threw a beer bottle at Sophia. She was unsure
about whether the bottle actually hit the wall near her or whether it hit her. In any event,
Sophia remembered that she had just turned around when she was knocked unconscious.
When she awakened, she had a cut on the back of her head requiring seven staples to
close and for which she had to take pain medication. She also had bruises on her chest,
face, and arm.

 We do not believe that the injuries actually suffered by Sophia, while they were
significant, meet the Code definition of "serious bodily injury." They obviously did not result
in her death. Under this record, the bruises inflicted on Sophia did not amount to serious
bodily injury. See, e.g., Pickering v. State, 596 S.W.2d 124, 128 (Tex.Crim.App. 1980)
(holding bruises, even on a child, were not serious bodily injury).

 There is no dispute that the cut on Sophia's scalp will result in some type of scar. 
However, as numerous cases discussing scars make clear, the type of scar with which we
are concerned, located on the back of Sophia's head and within the hair line, does not
amount to "serious permanent disfigurement" within the purview of the statute. For
example, in Pickering, the court held that scarring from cigarette burns on a child's lower
back would not result in sufficient serious permanent disfigurement to support a finding of
serious bodily injury. Pickering, 596 S.W.2d at 128. In Bueno v. State, 996 S.W.2d 406,
408 (Tex.App.-Beaumont 1999, no pet.), the court held that a two-inch scar on a child's
abdomen was not sufficient to show serious permanent disfigurement within the purview
of the statute. Also, in Hernandez v. State, 946 S.W.2d 108, 113 (Tex.App.-El Paso 1997,
no pet.), the court held that a one-inch scar on the abdomen resulting from a stab wound
and subsequent surgery was not sufficient to amount to the requisite "serious permanent
disfigurement." See also McCoy v. State, 932 S.W.2d 720, 724 (Tex.App.-Fort Worth
1996, pet. ref'd). But cf. LaSalle v. State, 973 S.W.2d 467, 473 (Tex.App.-Beaumont
1998, pet. ref'd) (facial scars supported finding of serious permanent disfigurement). 

 In contending a serious permanent disfigurement was shown, the State also points
to evidence that Sophia lost consciousness and suffered memory and blood loss. In doing
so, however, it does not cite any cases holding that similar facts would support a finding
of serious bodily injury. The case most factually similar is Sanchez v. State, 543 S.W.2d
132 (Tex.Crim.App. 1976), in which the court held that evidence that an assault victim lost
consciousness and memory from the time of the assault until waking up in the hospital was
insufficient to show a serious bodily injury. Id. at 134; see also Fierro v. State, 626 S.W.2d
597, 598-99 (Tex.App.-El Paso 1981, pet. ref'd) (holding the fact the victim was knocked
out and did not recall anything until the next morning is not sufficient evidence of serious
bodily injury). In this case, there is no evidence that Sophia's loss of memory or blood
posed a risk of death or protracted loss or impairment of a bodily member or organ. 
Therefore, they could not support a finding of actual serious bodily injury.

 However, that holding does not complete our task. We must next consider whether,
in the manner of its use or intended use, the bottle was capable of causing death or
serious bodily injury. In making that determination, the testimony of Lubbock Police Officer
Travis Riddle is crucial. In relevant part, Officer Riddle testified that he had occasion to see
Sophia at the hospital. At that time, he noticed that both of Sophia's eyes were black, the
laceration on the back part of her scalp was bleeding "pretty profusely," and there was a
"lot of blood." She also had a small puncture wound on her hand. He could not determine
whether the injury to her scalp had been made from a sharp edge or "a blunt impact" later
determined to be a bottle. In his opinion, a bottle, whether broken or not, was something
that in the manner of its use or intended use could cause death or serious bodily injury. 
He further opined that if the recipient of the thrown bottle had attempted to dodge one way
or another, the thrown bottle could have hit her in the eye and thereby caused permanent
eye damage. He also opined that if the thrown bottle had broken, a piece of it could have
hit either Sophia's jugular or carotid artery, which could have caused her to bleed to death. 


 In addition to the standards of review we have set out above, the Court of Criminal
Appeals has cautioned us that as a reviewing court, we must always remain cognizant of
the unique role of the jury as factfinder. The jury is in a position that the reviewing court
is unable to occupy. We may only disagree with the jury's determination when the record
clearly indicates that such a step is necessary to arrest the occurrence of a manifest
injustice. Otherwise, due deference must be accorded the jury's determination. Johnson
v. State, 23 S.W.3d 1, 9 (Tex.Crim.App. 2000).

 Viewed in the light by which we must consider it, we cannot say that the jury's
obvious conclusion that appellant threw a bottle at Sophia which caused her injuries, and
the manner and force by which it was thrown, was insufficient to show that it was intended
to cause death or serious bodily injury.

 Accordingly, appellant's issue is overruled, and the judgment of the trial court is
affirmed.


 John T. Boyd

 Senior Justice


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).