NO. 07-01-0367-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 12, 2002

_____

JOSE S. GONZALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-436732; HONORABLE CECIL G. PURYEAR, JUDGE

_____

Before REAVIS and JOHNSON, JJ., and BOYD, SJ.[1]

In a single issue, appellant Jose S. Gonzales challenges his conviction by a jury of aggravated assault with a deadly weapon and the resulting punishment, assessed by the trial court, of 35 years confinement in the Institutional Division of the Department of Criminal Justice. We affirm the judgment of the trial court.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).

In his issue, appellant argues the evidence is factually insufficient to support the jury finding concerning appellant's use of a deadly weapon in committing the assault. More precisely, the question presented in this appeal is whether a beer bottle was used by appellant in such a manner that it was capable of causing death or serious bodily injury, thus meeting one of the essential elements of the offense of aggravated assault.

When reviewing a factual sufficiency challenge, we must neutrally examine all of the evidence and determine whether it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1,11 (Tex.Crim.App. 2000); *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App. 1996). As relevant here, a person commits the offense of aggravated assault if he commits an assault as defined in section 22.01 of the Penal Code, and he uses or exhibits a deadly weapon during the course of the assault. Tex. Pen. Code Ann. § 22.02(a)(2) (Vernon 1994). Thus, in this case, the use or exhibition of a deadly weapon is an essential element of the offense of aggravated assault. A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(17)(B). The Code goes on to define serious bodily injury as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(46).

In relevant part, the indictment charged that appellant "did then and there intentionally, knowingly, and recklessly cause bodily injury to SOPHIA GARCIA, by striking

2

the said SOPHIA GARCIA with a hard object, the exact nature of which is unknown to the Grand Jury, and did then and there use a deadly weapon, to-wit: a hard object, the exact nature of which is unknown to the Grand Jury, that in the manner of its use and intended use was capable of causing death and serious bodily injury."

The incident giving rise to this prosecution occurred on November 25, 2000. On that date, appellant and Sophia Garcia, his girlfriend at the time, were by themselves at the home of appellant's brother. They were, and had been, drinking alcohol since early that morning. They began to argue, and the argument escalated into a physical confrontation. According to Sophia, appellant began hitting her with his fist hard enough to cause bruises. At some point during the fracas, appellant threw a beer bottle at Sophia. She was unsure about whether the bottle actually hit the wall near her or whether it hit her. In any event, Sophia remembered that she had just turned around when she was knocked unconscious. When she awakened, she had a cut on the back of her head requiring seven staples to close and for which she had to take pain medication. She also had bruises on her chest, face, and arm.

We do not believe that the injuries actually suffered by Sophia, while they were significant, meet the Code definition of "serious bodily injury." They obviously did not result in her death. Under this record, the bruises inflicted on Sophia did not amount to serious bodily injury. *See, e.g., Pickering v. State*, 596 S.W.2d 124, 128 (Tex.Crim.App. 1980) (holding bruises, even on a child, were not serious bodily injury).

3

There is no dispute that the cut on Sophia's scalp will result in some type of scar. However, as numerous cases discussing scars make clear, the type of scar with which we are concerned, located on the back of Sophia's head and within the hair line, does not amount to "serious permanent disfigurement" within the purview of the statute. For example, in *Pickering*, the court held that scarring from cigarette burns on a child's lower back would not result in sufficient serious permanent disfigurement to support a finding of serious bodily injury. *Pickering,* 596 S.W.2d at 128. In *Bueno v. State*, 996 S.W.2d 406, 408 (Tex.App.–Beaumont 1999, no pet.), the court held that a two-inch scar on a child's abdomen was not sufficient to show serious permanent disfigurement within the purview of the statute. Also, in *Hernandez v. State*, 946 S.W.2d 108, 113 (Tex.App.–El Paso 1997, no pet.), the court held that a one-inch scar on the abdomen resulting from a stab wound and subsequent surgery was not sufficient to amount to the requisite "serious permanent disfigurement." *See also* McCoy v. State*,* 932 S.W.2d 720, 724 *(*Tex.App.–Fort Worth 1996, pet. ref'd). *But cf. LaSalle v. State*, 973 S.W.2d 467, 473 (Tex.App.–Beaumont 1998, pet. ref'd) (facial scars supported finding of serious permanent disfigurement).

In contending a serious permanent disfigurement was shown, the State also points to evidence that Sophia lost consciousness and suffered memory and blood loss. In doing so, however, it does not cite any cases holding that similar facts would support a finding of serious bodily injury. The case most factually similar is *Sanchez v. State*, 543 S.W.2d 132 (Tex.Crim.App. 1976), in which the court held that evidence that an assault victim lost consciousness and memory from the time of the assault until waking up in the hospital was

insufficient to show a serious bodily injury. *Id.* at 134; *see also Fierro v. State*, 626 S.W.2d 597, 598-99 (Tex.App.–El Paso 1981, pet. ref'd) (holding the fact the victim was knocked out and did not recall anything until the next morning is not sufficient evidence of serious bodily injury). In this case, there is no evidence that Sophia's loss of memory or blood posed a risk of death or protracted loss or impairment of a bodily member or organ. Therefore, they could not support a finding of actual serious bodily injury.

However, that holding does not complete our task. We must next consider whether, in the manner of its use or intended use, the bottle was *capable* of causing death or serious bodily injury. In making that determination, the testimony of Lubbock Police Officer Travis Riddle is crucial. In relevant part, Officer Riddle testified that he had occasion to see Sophia at the hospital. At that time, he noticed that both of Sophia's eyes were black, the laceration on the back part of her scalp was bleeding "pretty profusely," and there was a "lot of blood." She also had a small puncture wound on her hand. He could not determine whether the injury to her scalp had been made from a sharp edge or "a blunt impact" later determined to be a bottle. In his opinion, a bottle, whether broken or not, was something that in the manner of its use or intended use could cause death or serious bodily injury. He further opined that if the recipient of the thrown bottle had attempted to dodge one way or another, the thrown bottle could have hit her in the eye and thereby caused permanent eye damage. He also opined that if the thrown bottle had broken, a piece of it could have hit either Sophia's jugular or carotid artery, which could have caused her to bleed to death.

5

In addition to the standards of review we have set out above, the Court of Criminal Appeals has cautioned us that as a reviewing court, we must always remain cognizant of the unique role of the jury as factfinder. The jury is in a position that the reviewing court is unable to occupy. We may only disagree with the jury's determination when the record clearly indicates that such a step is necessary to arrest the occurrence of a manifest injustice. Otherwise, due deference must be accorded the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex.Crim.App. 2000).

Viewed in the light by which we must consider it, we cannot say that the jury's obvious conclusion that appellant threw a bottle at Sophia which caused her injuries, and the manner and force by which it was thrown, was insufficient to show that it was intended to cause death or serious bodily injury.

Accordingly, appellant's issue is overruled, and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.

6