Charles Lee **HAWKINS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–88–00592–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 24, 1990.

the two men who took turns sexually assaulting her. The husband testified about his discussion with his wife at the scene of the crime.

## I. Motions to quash

In his first two points of error, Hawkins complains that the trial court erred in overruling his motions to quash the indictment. In his motions to quash, Hawkins complained of procedural irregularities in the presentment of the indictment. On appeal, he reasserts those complaints.

James C. McBride, James E. Walker, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Jose Gonzalez–Falla, Leslie Brock, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, HUGHES and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a conviction for sexual assault. After a jury convicted Charles Lee Hawkins, appellant, the trial court sentenced him to life imprisonment. We affirm.

Complainant, a deaf woman, was sexually assaulted by Hawkins and John Clarence Soloman. She reported the assault to the motel manager, who called the police and the complainant's husband. The husband, at his sister's house at the time of the assault, went to the motel. The husband interpreted his wife's sign language to the investigating officers. Interpreting for her, the husband said the complainant recognized her assailants as acquaintances of her husband. The complainant identified them as "Charles with the bulgy eyes" and "Shorty." As a result of interviews with the complainant and her husband, Houston police arrested Hawkins and his co-defendant, John Clarence Soloman. The two were tried together.

Complainant testified during trial with the assistance of a court appointed interpreter. She identified Hawkins as one of

### A. *Cause number variations*

■ In his first point of error, Hawkins contends the trial court should have quashed the indictment because the court's minutes reflect that he was true billed under one cause number, while his indictment bears another number. He says the variance violates the rule established by the old Texas Court of Appeals in *English v. State*, 18 S.W. 678 (Tex.Ct.App. 1892).

Hawkins' indictment bears the number 493,507. The record contains the memorandum of true bills voted on January 28, 1988. The memorandum shows that the grand jury voted to true bill Charles Lee Hawkins under cause number 493,506. The memorandum also shows that Harold Willis, not Hawkins, was true billed that day under cause number 493,507. A court clerk testified in a pretrial hearing that the discrepancy was the result of a typographical error in her office, although it is unclear from her testimony whether it is the memorandum or the indictment that carries the incorrect number.

Article 20.22 of the Code of Criminal Procedure provides:

> The fact of a presentment of indictment by a grand jury shall be entered upon the minutes of the court, noting briefly the style of the criminal action and the file number of the indictment, but omitting the name of the defendant, unless he is in custody or under bond.

TEX.CODE CRIM.P.ANN. art. 20.22 (Vernon Supp.1990). The purpose of the statute is to ensure that persons are tried only under

true bills. *Reese v. State,* 142 Tex.Crim. 254, 151 S.W.2d 828, 835 (1941) (citing TEX. CODE CRIM.P.ANN. art. 394 (1876) (repealed 1965), the predecessor to article 20.22).

In *English v. State,* the appellate transcript contained a memorandum reciting that the grand jury returned an indictment bearing docket number 154 to the trial court. 18 S.W. at 679. The indictment actually bore the number 172. The defendant moved to quash the indictment, on the ground that the grand jury did not return a true bill. The trial court denied that motion. The court of appeals refused to dismiss the indictment, but remanded "in order that an opportunity may be afforded the prosecution to explain or correct this manifest discrepancy." *Id.*

In the present case, the discrepancy between the file numbers was explained by the testimony of the trial court's clerk that her office committed a typographical error. Hawkins does not argue that the grand jury did not vote to true bill him on January 28, 1988. Hawkins does not dispute the clerk's testimony that a true bill of indictment was presented to the trial court. Despite the typographical error, the statutory purpose was served: the grand jury returned a true bill on Hawkins. *Reese,* 142 Tex.Crim. at 266, 151 S.W.2d at 835; *see also Webb v. State,* 533 S.W.2d 780, 787 (Tex.Crim.App.1976) (clerk's testimony supported trial court's finding that indictment had been returned against defendant, and that incorrect cause number on indictment was clerical error).

We overrule the first point of error.

### B. *Grand jury memorandum*

In his second point of error, Hawkins contends the trial court should have quashed the indictment because there is no grand jury memorandum of indictments in the record. The Code of Criminal Procedure provides that, whenever nine grand jurors vote for a true bill of indictment, the presiding grand juror "shall make a memorandum" of that fact to guide the State's attorney in preparing the indictment. TEX. CODE CRIM.P.ANN. art. 20.19 (Vernon 1977). Article 20.19 states:

After all the testimony which is accessible to the grand jury shall have been given in respect to any criminal accusation, the vote shall be taken as to the presentment of an indictment, and if nine members concur in finding the bill, the foreman shall make a memorandum of the same with such data as will enable the attorney who represents the State to write the indictment.

Although Hawkins argues there is no memorandum, the State introduced exhibits 1 and 2 at the hearing as the memoranda of indictments. Those exhibits are in the transcript. The memoranda list two reindictments that were presented by the foreman of the grand jury to the district clerk.

We overrule the second point of error.

## II. The husband's testimony

In his third point of error, Hawkins argues that the trial court erred in overruling his objection to the testimony of the husband about the complainant's identification of her assailants. The husband testified that when he arrived at the scene, about an hour and a half after the assault, his wife "was very nervous and she was crying." She immediately identified, through sign language, "our friend with the bulgy eyes, Charles," as one of her assailants. The trial court overruled Hawkins' objection that this testimony was hearsay.

Hawkins contends that the trial court erred for three reasons: (1) the testimony was hearsay; (2) the husband did not qualify as an expert interpreter for the deaf; and (3) the testimony, offered before the complainant had testified, was preemptive bolstering. Hawkins did not raise the last two grounds in the trial court and we cannot consider them on appeal. *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim. App.1986); *Allen v. State,* 657 S.W.2d 151, 153 (Tex.App.—Houston [1st Dist.] 1983), *aff'd,* 671 S.W.2d 46 (Tex.Crim.App.1984).

The trial court admitted the complainant's identification of her attacker as an excited utterance. An excited utterance is defined as a "statement relating to a startling event or condition made while the

declarant was under the stress of excitement caused by the event or condition." Tex.R.Crim.Evid. 803(2). Hawkins argues that too much time elapsed between the assault and the identification for the latter to have qualified as an excited utterance.

In determining the admissibility of statements under the excited utterance exception to the hearsay rule, the element of time is an important, but not controlling, factor. *Fisk v. State*, 432 S.W.2d 912, 914–15 (Tex.Crim.App.1968); *Short v. State*, 658 S.W.2d 250, 255 (Tex.App.—Houston [1st Dist.] 1983), *aff'd*, 671 S.W.2d 888 (Tex.Crim.App.1984). The critical factor is whether the person who made the statement was still dominated by the emotions arising from the exciting event. *Fisk*, 432 S.W.2d at 915; *Short*, 658 S.W.2d at 255. In *Short*, for example, we held that the exception applied to a statement made at least four and one-half hours after the exciting event. 658 S.W.2d at 255.

■■■ By overruling the objection, the trial court ruled that the complainant was still under the stress of her assault when she identified Hawkins as her attacker. That ruling is supported by the husband's testimony that his wife was nervous and crying when she told him Hawkins attacked her. Hawkins, who had the right to conduct a voir dire examination of the witness, did not elicit any controverting testimony when the court admitted the statement. Instead, Hawkins argued that one and one-half hours was too long a period, as a matter of law, between the event and the statement. Because we have held that four and one-half hours was not too long a period, we find no error. *See Short*, 658 S.W.2d at 255.

We overrule the third point of error.

### III. Sufficiency of the evidence

In his fourth point of error, Hawkins complains of the sufficiency of the evidence to support his conviction. When we review the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict. *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985); *Lewis v. State*, 737 S.W.2d 857, 863 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). The purpose of the inquiry is to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett*, 682 S.W.2d at 304; *Lewis*, 737 S.W.2d at 863. In this case, the applicable statute required the State to prove that Hawkins intentionally and knowingly penetrated the complainant's sexual organ without her consent. Tex.Penal Code Ann. § 22.011(a)(1)(A) (Vernon 1989).

■■■ The complainant testified that she knew Hawkins and that she recognized him as one of two attackers who took turns sexually assaulting her. Although Hawkins contends that the complainant's testimony was not credible because she equivocated about the time she recognized her assailants, the question of credibility was one for the jury to determine, not an appellate court. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.) *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); *Short*, 658 S.W.2d at 255.

We overrule the fourth point of error.

### IV. Motion to videotape

■■■ In his fifth point of error, Hawkins urges that the trial court erred in denying his motion to videotape the complainant's testimony and the interpretation of that testimony by the deaf interpreter. He relies on the statute that provides a trial court *"may* order" such testimony videotaped "for use in verification of the reporter's notes." Tex.Code Crim.P.Ann. art. 38.31(a) (Vernon Supp.1990) (emphasis added). Hawkins does not contend that the court reporter's notes are inaccurate. Instead, he complains of two instances in which the interpreter allegedly coached the complainant during her trial testimony. The statement of facts reflects that, in the first instance, the court instructed the interpreter simply to repeat counsel's questions after defense counsel objected that the interpreter was conversing with the

witness. In the second instance, defense counsel made no objection.

Hawkins has cited no authority for his argument that the trial court had a duty to order the videotaping of the complainant's testimony, and our own search has located none.

Statutory words and phrases must be read in context and construed according to the rules of grammar and common usage, according to the Code Construction Act. TEX.GOV'T CODE ANN. § 311.011(a) (Vernon 1988). Nothing within the language of the statute indicates that the legislature used "may" in anything but its usual sense. Since 1979, article 38.31(a) has read:

> If the court is notified by a party that the defendant is deaf and will be present at an arraignment, hearing, examining trial, or trial, or that a witness is deaf and will be called at a hearing, examining trial, or trial, the court *shall* appoint a qualified interpreter to interpret the proceedings in any language that the deaf person can understand, including but not limited to sign language. On the court's motion or the motion of a party, the court *may* order testimony of a deaf witness and the interpretation of that witness visually, electronically recorded for use in verification of the transcription of the reporter's notes. The clerk of the court *shall* include that recording in the appellate record if requested by a party under Article 40.09 of this Code.

TEX.CODE CRIM.P.ANN. art. 38.31(a) (emphasis added).

The statute uses the word "may," which implies that the trial court had the discretion, but not the duty, to order videotaping to verify the accuracy of the typed statement of facts. *See United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983). This common-sense principle of statutory construction may be rebutted by a showing of contrary legislative intent or by obvious inferences from the structure and purpose of the statute. *Id.* at 707, 103 S.Ct. at 2149. *See also* Tex.Code Construction Act § 311.011(a) (words and phrases are to be construed according to common usage).

When informed that the defendant or a witness is deaf, the trial court must appoint an interpreter and has no discretion to refuse. *Adams v. State*, 749 S.W.2d 635, 638 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (quoting Op.Tex.Att'y Gen. No. JM–113 (1983) ). This mandatory duty is signalled by the statute's use of the word "shall."

In the very next sentence, the statute uses the word "may" in referring to the trial court's authority to order the electronic recording of a deaf witness's testimony and the interpretation of that testimony. The structure of the statute does not show that the legislature intended "may" to have a mandatory meaning. *See Rodgers*, 461 U.S. at 707, 103 S.Ct. at 2149. Had the legislature intended to impose a mandatory duty to videotape, it would have used the word "shall," as it did in the immediately preceding sentence.

We conclude that the decision whether to order videotaping "for use in verification of the reporter's notes" was a matter within the trial court's discretion. Without a challenge to the accuracy of the statement of facts, we can find no abuse of discretion.

We overrule the fifth point of error.

## V. Voir dire

■ In his sixth point, Hawkins argues that the prosecutor improperly commented on Hawkins' criminal record during voir dire. Hawkins contends the prosecutor's comment violated the rule of *Frausto v. State*, 642 S.W.2d 506, 508 (Tex.Crim.App. 1982). Hawkins maintains it was particularly prejudicial in his case because the jury was not going to make the decision on punishment; the court was going to impose punishment.

The prosecutor stated the following:

> All the trials in Texas are divided into two stages. What you will be selected for is the guilt-innocence phase of the trial and that's the only evidence that you'll be hearing about is whether or not the defendant[s] ... are guilty of the offense they're charged with. If the jury returns a verdict of guilty, then we

move to the next phase of the trial which is the punishment phase. And in this situation, the Judge will be assessing the punishment. So you as jurors won't hear any evidence during the guilt portion about what would be a proper punishment because since we have a separate punishment phase of the trial the law provides that the evidence of the person's background ... whether or not the person has any prior criminal record is admissible only in the punishment phase.

Defense counsel objected to this reference to evidence admissible only at the punishment phase. The court overruled the objection. The prosecutor then concluded: "So, you as jurors will be concerned only with one question and that is whether or not the defendants are guilty or innocent of the offense they're charged with."

Hawkins argues that the prosecutor's statements violated TEX.CODE CRIM.P.ANN. art. 36.01(a)(1) (Vernon Supp.1990), which forbids the reading of an indictment's enhancement paragraphs before the punishment hearing. Article 36.01(a)(1) provides:

The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

The purpose of article 36.01(a)(1) is to prevent prejudice from an announcement at the beginning of the trial that the defendant was convicted of other specific crimes. *Frausto*, 642 S.W.2d at 508. The provision is mandatory and when it is violated, we must reverse. *Id.*

In *Frausto*, the prosecutor told the jury during voir dire of "the specific allegations contained in the enhancement paragraph of a particular defendant's indictment." In reversing the conviction, the court said:

We conclude that the prosecutor's statement to the jury panel was the functional equivalent of reading to the jury panel the enhancement paragraph to the jury

[sic], a violation within the meaning and scope of Art. 36.01(a)(1), V.A.C.C.P. 642 S.W.2d at 508.

We do not agree that the prosecutor here violated the *Frausto* rule. Her statements were incidental to her explanation of the jury's responsibility of determining guilt or innocence, and did not allude to Hawkins' criminal record. While the prosecutor's comments about the evidence admissible at a punishment hearing were not necessary to her message, we do not find those statements to be so pointed that they improperly suggested that Hawkins was criminally inclined.

We overrule the sixth point of error.

## VI. Final argument

■ In his seventh point of error, Hawkins complains about the prosecutor's final argument. Hawkins contends that when the prosecutor suggested that Hawkins' co-defendant could have entered the complainant's room through a small bathroom window, and then opened the front door for Hawkins, she was referring to matters outside the record.

Permissible jury argument includes summations of the evidence, reasonable deductions from the evidence, answers to arguments of opposing counsel, and pleas for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex.Crim.App.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Johnson v. State*, 773 S.W.2d 721, 728 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). An investigating officer testified that he saw a bathroom window that had been broken in from the outside, and what appeared to be a latent footprint on the toilet lid. He also testified that Soloman, the co-defendant, was small enough to have climbed through the window. The prosecutor's closing argument was reasonably based on this testimony.

We overrule the seventh point of error.

## VII. Incomplete record

■ In his final point of error, Hawkins urges that we remand his case for a new trial because he has been denied a complete

statement of facts on appeal. During the trial, Hawkins moved to suppress the blood samples on the ground that the State did not show a chain of custody. At a hearing outside the presence of the jury, after counsel had examined the custodian of the blood samples, the following exchange took place:

> Mr. McBride [Hawkins' counsel]: Your honor, we will object to that admission before the jury until the chain is established.
> The Court: That objection is overruled. Any objections, Mr. Cannon [co-defendant's counsel]?
> Mr. Cannon: Two questions, if I may.
> The Court: Go ahead. Ready? Are you ready for the jury?

The statement of facts does not contain the two questions that Soloman's counsel was about to ask. According to the statement of facts, the jury then returned and the direct examination by the prosecutor continued.

We ordered the trial court to conduct a hearing on Hawkins' motion to supplement the statement of facts. TEX.R.APP.P. 55(a). At that hearing, Soloman's counsel testified that he could not recall whether he had in fact asked any questions, or what the questions were about. At the end of the hearing, the trial court stated that, even if unrecorded questions were asked, those questions would not have pertained to Hawkins, but to his co-defendant. The court then stated its finding that "there's nothing missing from the record."

Rule 55(a) gives the trial court the authority to settle disputes about the accuracy of the statement of facts. We hold the court's finding that the record was complete is supported by the testimony of Soloman's counsel that he could not recall asking additional questions. Thus, we cannot find that the trial court abused his authority under the rules of appellate procedure.

The two cases cited by Hawkins are distinguishable from the present case. *See Austell v. State,* 638 S.W.2d 888, 890 (Tex. Crim.App.1982) (after defendant escaped, the record of the voir dire examination was destroyed); *Gamble v. State,* 590 S.W.2d 507, 508 (Tex.Crim.App.1979) (notes recording jury argument were destroyed). In both those cases, the absence of a statement of facts was undisputed. *Austell,* 638 S.W.2d at 889; *Gamble,* 590 S.W.2d at 508. In our case, the trial court's finding shows the accuracy of the statement of facts.

We overrule the eighth point of error, and affirm the judgment of the trial court.