**Stacey Lamar MATHEWS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–258–CR.**

Court of Appeals of Texas,
Fort Worth.

July 28, 1992.

Rehearing Overruled Sept. 15, 1992.

David L. Richards, Fort Worth, for appellant.

Tim Curry, Crim.Dist.Atty., C. Chris Marshall, John A. Stride, Robert Gill and Kenneth Mullen, Assts., Fort Worth, for the State.

Before FARRIS, MEYERS and ASHWORTH (Retired), JJ.

## OPINION

MEYERS, Justice.

Appellant, Stacey Lamar Mathews, appeals from a conviction by the jury of aggravated robbery. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1992). Punishment was assessed by the jury at sixty years confinement and fine of $10,000.

We affirm.

On August 31, 1988, Christy Marshall, the morning manager at a McDonald's located in Pantego, arrived to prepare the restaurant for its morning opening. She arrived alone and, as a security precaution, drove once around the store to make sure everything appeared secure. She then went inside. The only source of light on at the time was a heat lamp over a bin on a counter.

As Christy crossed the floor, she heard a thud and saw a person step out from behind the shake machine. The man immediately began shooting at her with a handgun. She was hit with a number of rounds and fell to the floor. While laying on the floor she heard the sound of cash tills being emptied from the safe.

In the ambulance, Christy told a paramedic that her assailant was a black male. Stacey Lamar Mathews was the only black assistant manager employed at the Pantego McDonald's, and he had keys to the restaurant and knew the combination to the safe. Because his fingerprints were found on the office door, he was arrested and it was discovered that he possessed a gun, and gunpowder was found on his tennis shoes matching that on Christy's shirt.

■ In his first point, Mathews asserts that the paramedic should not have been allowed to testify that he was told by the victim that she had been shot by a black man. The complained-of testimony was as follows:

[PROSECUTOR:] What description did she give you of her assailant?

[DEFENSE COUNSEL]: Objection.

. . . .

[DEFENSE COUNSEL]: Objection as to what this witness may have said, Your Honor, that's a hearsay statement. It may well be that it's an exception to the hearsay rule. If it is, that's a legal matter to be taken up with the Court outside of the presence and hearing of the jury and we would so request.

THE COURT: Your request is denied and your objection is overruled.

Go ahead.

. . . .

[PROSECUTOR]: Would you please tell the jury what description Christy Marshall gave of her assailant to you.

[DEFENSE COUNSEL]: Excuse me, Your Honor, the proper predicate has not been laid to allow this to be an exception to the hearsay rule, and I would like to inquire of the State under what theory they intend to offer this as an exception.

THE COURT: Your objection is overruled.

[DEFENSE COUNSEL]: Please note our exception.

THE COURT: Yes, sir.

Answer—you can answer the question.

THE WITNESS: Okay. She told me it was a black male.

The State argues that the statement should be admitted under the excited utterance exception of TEX.R.CRIM.EVID. 803(2). An excited utterance is defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.*

Mathews argues that the State failed to qualify the admission of the paramedic's testimony under the excited utterance exception. He cites this court to a prerules case which required the State to establish the period of time between the event and the alleged assertion by the declarant.

In determining the admissibility of statements under the excited utterance exception to the hearsay rule, the element of time is an important, but not controlling, factor. *Hawkins v. State*, 792 S.W.2d 491, 495 (Tex.App.—Houston [1st Dist.] 1990, no pet.). In *Hawkins*, the Houston court of appeals found the statement to be an excited utterance even though one and one-

half hours had passed between the statement and the event. The court felt the critical factor was whether the person who made the statement was still dominated by the emotions arising from the exciting event. *Id.*

In the present case, the record reflects that Christy had been struck by four bullets, one striking an important artery, and she was losing a lot of blood. Christy dragged herself across the floor, and tried to use the restaurant phone. The phone was out of order, so she pulled herself up, recovered her purse from where she was shot, and went to her car and drove across the street to a Jack In The Box. Two workers there called the police and the paramedics. Christy made the statements in the ambulance. The trial court correctly found that Christy was still under the stress of her assault when she made the statement. Mathews' first point of error is overruled.

█ In his second point, Mathews argues that it was error to allow McDonald's shift manager to testify that he had never heard anyone give the combination to the safe to anyone else. The complained-of testimony was as follows:

> [PROSECUTOR:] Had you ever heard of anybody giving the combination to the safe to anyone?
>
> [DEFENSE COUNSEL]: Excuse me, that's hearsay.
>
> THE COURT: Overruled.
>
> THE WITNESS: No.

Mathews asserts that the statement was hearsay. He argues that it was testimony of nonverbal conduct of other managers offered to prove that the combination had not been leaked to others. Mathews cites *Trussell v. State*, which held that a witness's failure to pick the appellant from a lineup was an out-of-court statement that appellant was not the perpetrator of the crime. *Trussell v. State*, 585 S.W.2d 736, 739 (Tex.Crim.App. [Panel Op.] 1979). In *Trussell*, the witness had an obligation to speak, and having not spoken her silence would imply that there was no one in the lineup who committed the crime. *Id.*

In the present case, the witness did not have an obligation to overhear others giving out the combination of the safe. And further, this court does not know that if others had given out the combination, this witness would necessarily have heard such a conversation. If it had been established that if others had given out the combination this witness would have heard it, then this might have been relevant evidence to show that no one but the managers had the combination to the safe. Absent proof that this witness would have definitely heard others giving out the combination to non-managers, this statement does not necessarily show that no one else but managers had the combination. Therefore, if the statement was hearsay, its admission was harmless error. TEX.R.APP.P. 81(b)(2). Mathews' second point of error is overruled.

█ In his third point, Mathews argues that the prosecutor made improper statements on the standard proof of beyond a reasonable doubt. The complained-about voir dire went as follows:

> [PROSECUTOR:] The burden of proof in all criminal cases is the same; and that is, we have to prove this case beyond a reasonable doubt to you. We have to prove a theft case beyond a reasonable doubt. We have to prove a speeding ticket beyond a reasonable doubt if the police charge somebody with speeding.
>
> It's the same standard that holds true in every court in the United States for every kind of criminal offense. The burden of proof in this case is the same as it would be for a speeding ticket. Does that sound fair to everybody.
>
> THE JURORS: Yes.
>
> [THE PROSECUTOR]: It's kind of universal standard so that people know when they are being charged, what the State's burden of proof is and we always know what our burden of proof is.
>
> We can't say much about what beyond a reasonable doubt is because it's not defined by the law. There is no definition for the term beyond a reasonable doubt. That's left up to each and every

individual juror to decide for himself or herself if they have a reasonable doubt about something that the State is required to prove.

And, again, let me emphasize, that phrase is something the State is required to prove. Reasonable doubt has to go to one of the elements of the indictment.

For example, if we're trying a case and a juror had a reasonable doubt about what color of car someone was driving at some point in the trial, unless the State was required to prove that as a [sic] element, that wouldn't be a reason for finding someone not guilty. Does everyone follow me on that?

[DEFENSE COUNSEL]: Judge, we've got to object to that. For him to say that wouldn't be a reason to find someone not guilty is again trying to bind the jurors to his theory of the law. That may cause them to totally disbelieve the testimony of the witness and discount their credibility and find somebody not guilty. That could be a perfect reason and we object.

THE COURT: Overruled.

The conduct of voir dire examination rests within the sound discretion of the trial court. *Dowden v. State,* 758 S.W.2d 264, 274 (Tex.Crim.App.1988). Only abuse of such discretion will call for reversal on appeal. *Id.* In the present case, the prosecutor was merely illustrating to the jury that the standard was to be applied only to elements of the case and not to incidental matters. The trial court did not abuse its discretion in overruling Mathew's objection. Mathew's third point of error is overruled.

In his fourth point, Mathews asserts that the trial court erred in denying his request that the term "beyond a reasonable doubt" be defined in the jury instructions. Mathews fails to cite relevant authority in support of his assertion that an instruction on reasonable doubt should have been included in the jury charge, and thus, presents nothing for review. TEX.R.APP.P. 74(f). Mathews' fourth point of error is overruled.

In his fifth point, Mathews argues that the trial court should have allowed a limiting instruction concerning an extraneous offense introduced at trial. During the State's case in chief, David Scott Blew testified that when he worked at the McDonald's, Mathews had been his shift manager and told them he possessed a gun. Defense objected prior to further testimony that Blew saw the gun in the glove box of Mathews' car. Out of the presence of the jury, the trial court allowed each side to take the witness on voir dire, overruled defense's objections, and admitted the testimony.

Prior to the trial court reading the charge to the jury, Mathews requested that an instruction be included concerning the handgun in the glove box. The trial court denied Mathews' requested instruction.

The State argues that the evidence of the gun in Mathew's car glove compartment had already been introduced during cross-examination of a prior witness. Where a defendant first injects an extraneous offense into evidence by his own cross-examination, a limiting instruction concerning that offense is not required. *Gonzales v. State,* 672 S.W.2d 618, 620 (Tex.App.—Amarillo 1984, no pet.). It was not error for the trial court to deny the limiting instruction. Mathews' fifth point of error is overruled.

Judgment is affirmed.