Affirmed and Memorandum Opinion filed May 27, 2004









Affirmed and Memorandum Opinion filed May 27, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00414-CR

____________

 

RAUL
REYES,
Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 

___________________________________________________

 

On Appeal from the 177th District Court

Harris
County, Texas

Trial Court Cause No. 905,558

 

___________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant, Raul Reyes, and
co-defendant, Raymond Ayala, were convicted of murder by a jury and sentenced
to life in prison.  In three issues,
appellant contends (1) the evidence is insufficient to corroborate an
accomplice witness=s
testimony; (2) the trial court erred in admitting hearsay testimony; and (3)
the trial court erred in admitting gang evidence during the punishment phase of
trial.  We affirm. 








I.  Factual Background

Appellant and several friends,
including Chris Caldwell, were at Hullabaloo=s night
club on February 26, 2002.  The
complainant, Joshua Mares, and his friend Hector Subia were also at the
club.  Appellant and Mares engaged in a
verbal altercation which ended when one of appellant=s
friends, Lewis Gonzales, hit Mares in the mouth.  All of the men were asked to leave the
club.  As Mares and Subia drove away,
appellant and his friends followed in three cars.  One of appellant=s friends
used an automatic weapon to shoot at Mares=s
vehicle.  They continued pursuing Mares
and Subia until Mares and Subia were stopped by police and arrested.[1]  

The following morning Mares was
released from jail on bond.  Appellant
and Ayala waited outside the jail where Mares was being held and followed him
to the neighborhood where Mares=s
friends, Tammy Hernandez and Joseph Carrizales lived.  They parked on a different street from the
home and while Mares sat in his vehicle, Ayala ran up and shot him. When Mares
crawled out of his vehicle, Ayala shot him in the head.  Ayala then escaped in a white Ford Escort
driven by appellant.  Eddie Suarez, a
friend of Mares, followed appellant and Ayala, until Gonzales intervened,
allowing appellant and Ayala to escape. 
Suarez identified both appellant and Ayala in a photographic line-up and
at trial. 

II.  Sufficiency of the Evidence








In appellant=s first
issue, he contends the State failed to sufficiently corroborate the accomplice
testimony of Chris Caldwell in accordance with article 38.14 of the Texas Code
of Criminal Procedure.[2]  Under article 38.14, a conviction cannot be
based on accomplice testimony unless it is corroborated by other evidence
tending to connect the defendant with the offense.  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 1979); Cathey v. State,
992 S.W.2d 460, 462 (Tex. Crim. App. 1999). 
The evidence is insufficient if it proves merely the commission of the
offense.  Cathey, 992 S.W.2d at
462.  However, the corroborating
evidence does not have to directly connect the defendant to the crime or be
sufficient by itself to establish guilt; it must only tend to connect the
defendant to the offense.  Id.; Gosch
v. State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991).  If the combined weight of all the
non-accomplice evidence tends to connect the defendant to the offense, the
requirement of article 38.14 has been fulfilled.  Gosch, 829 S.W.2d at 777.  In reviewing this point, we must eliminate
the accomplice testimony from consideration and then examine the testimony of
other witnesses to ascertain if there is any inculpatory evidence that tends to
connect the accused with the commission of the offense.  Cook v. State, 858 S.W.2d 467, 470
(Tex. Crim. App. 1993).  

1.  Accomplice Testimony

Christopher Caldwell was with
appellant, Gonzales, Owen Hanks, Justin Bush, and Domingo Valdez at Hullabaloo=s in the
early morning hours of February 27, 2002. 
Caldwell testified that he watched as appellant and Mares argued at the
club.  After being asked to leave the
club, the complainant and Subia yelled at appellant and his friends in the
parking lot and then drove away. 
Caldwell heard five to eight gunshots from what sounded like an
automatic weapon.  Caldwell stated that
Valdez shot Mares=s vehicle
from his car with an SKS rifle.  He was
unsure whether appellant was in the car with Valdez at the time.  

Appellant and his friends drove
in the same direction as Mares, but did not follow on the same street.  Hanks or Gonzales phoned Caldwell to tell him
that Mares and Subia were stopped and arrested by the police.  The group found Mares=s car in
an impound lot; instead of further damaging the vehicle, they left the
scene.  Appellant monitored where Mares
was being held.  








The next morning, appellant and
Ayala waited for Mares outside of the jail in a white Ford Escort.  When Mares was released, appellant and Ayala
followed him to a house in Channelview. 
Appellant waited in the car while Ayala, disguised with a white shirt
around his head, fired at Mares as he sat in his car, shooting him in the
chest.  As Mares crawled out of the car,
Ayala shot him in the head.  Ayala then
ran back to the white Escort driven by appellant and they left.  

Caldwell further testified that
Gonzales, driving a brown or gold truck, intervened when another vehicle tried
to follow appellant and Ayala after the shooting.  Later that day, appellant met with Caldwell,
Hanks, and Gonzales at a bar.  Appellant
had the murder weapon in his possession. 
Hanks and Caldwell destroyed the gun and disposed of its parts.[3]  Caldwell, appellant, and Ayala watched the
news on television and laughed when the media reported inaccuracies,
specifically the color of Gonzales=s truck,
used to thwart Suarez=s efforts
to follow appellant and Ayala. 

2.  Non-accomplice Testimony








Our examination of the
non-accomplice witness testimony reveals the following facts that sufficiently
tend to connect appellant Mares=s murder:
(1) appellant was involved in a verbal altercation with Mares the night before
the murder; (2) Mares stated to various witnesses that after the altercation,
appellant or his friends shot at Mares=s vehicle;
(3) Ayala was not at Hullaballoo=s and was
not involved in the altercation the night before the murder; (4) even after the
altercation and Mares=s vehicle
had been shot, appellant and his friends continued following Mares=s
vehicle; (5) after being released from jail, Mares went to Carrizales=s home,
not to his own residence; (6) Joel Rodriguez, Carrizales=s friend
and witness to the murder, saw a white Ford Escort in the neighborhood behind
Suarez immediately before the murder; (7) Carrizales saw a white Ford Escort
immediately after the murder; (8) Suarez followed Ayala as he fled the murder
scene and saw him get into a white Ford Escort; (9) Suarez was able to
positively identify Ayala as the shooter and appellant as the driver of the
Escort; (10) a white Ford Escort was registered to Diane Reyes who lived at the
same address as appellant; (11) Reyes=s Ford
Escort was reported stolen one hour after the murder and was subsequently found
burned; (12) a brown or gold truck thwarted Suarez=s efforts
to follow the white Ford Escort. 

Proof that appellant was at or
near the place where the crime occurred at or about the time it happened, along
with evidence of other circumstances, can be sufficient corroboration to
support a conviction.  See Cox v.
State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992).  The night before the murder, appellant and
Mares were involved in an altercation that was unresolved because they were
forced to leave the nightclub and Mares and Subia were arrested before
appellant and his friends could confront them. 
After being released from jail, Mares went to Carrizales=s home
and not his own.  Therefore, it is likely
that appellant and Ayala waited for Mares to leave jail and retrieve his car to
determine his whereabouts.  The
non-accomplice testimony in this case established that appellant was involved
in the circumstances surrounding the murder. 
All of this testimony sufficiently tends to connect appellant to the
crime.  Therefore, appellant=s first
issue is overruled.  

III.  Admissibility of the Excited Utterance

In his second issue, appellant
contends the trial court erred in permitting Harris County Sheriff=s Deputy
Alberto Rivera=s testimony regarding Subia=s
statements at the murder scene.  Deputy
Rivera testified as follows:

Q.  [by the prosecutor]:  Do you recall talking specifically to a
person by the name of Hector Subia?

A.  Yes, I did.

Q.  And had you ever met Hector Subia before?

A.  No.

Q.  When you talked to Hector Subia, can you tell
the ladies and gentlemen of the jury what his demeanor was?








A.  He was excited.  He was nervous.  He was running around, basically yelling that
his friend had just been shot.

Q.  Was he upset then?

A.  Yes, he was.

Q.  And what did he tell you that he had observed
or had transpired?

MR. ROACH [defense
counsel]:  Objection, hearsay.

THE COURT:  It will be overruled.

* * * * *

Q . Yeah.  Well, you said he was upset, he was excited,
he was running around.  And I=m asking you, what did he
tell you?

A.  He said that a male had shot his friend and B 

Q.  Did he tell you who?

A.  He mentioned the name ABobo.@[4]

Q.  And what else did he tell you?

MR. ROACH:  Objection to hearsay, Your Honor.

THE COURT:  That will be overruled.

 

Appellant first contends the
trial court erred by immediately overruling his objection to Rivera=s
testimony without requiring the State to assert an exception to the hearsay
rule.  Second, appellant contends Subia=s
statements were not admissible as excited utterances.  








We first consider whether the
trial court erred in overruling appellant=s
objection without first requiring the State to respond.  We review the trial court=s
admission or exclusion of evidence under an abuse of discretion standard.  Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996).  If an opposing party
raises an objection to hearsay testimony, the sponsoring party has the burden
to show the testimony is admissible pursuant to an exception to the hearsay
rule.  Cofield v. State, 891
S.W.2d 952, 954 (Tex. Crim. App. 1994). 
However, even if the exception offered at trial does not apply, we will
affirm if the evidence is admissible on any ground.  See Kipp v. State, 876 S.W.2d 330, 337
(Tex. Crim. App. 1994).  The trial court=s
decision will be upheld as long as it was within the zone of reasonable
disagreement.  Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990). 


Appellant relies on Patterson
v. State to support his claim that the trial court erred when it did not
require the State to respond to appellant=s hearsay
objection.  980 S.W.2d 529, 533 (Tex.
App.CBeaumont
1998, no pet.).  In Patterson, the
Beaumont Court of Appeals held that the State did not meet its burden of
showing an exception to the hearsay rule when the trial court admitted the
hearsay testimony without requiring the State to respond.  Id. at 532B33.  One concurring justice, however, disagreed
with that conclusion.  In a separate
opinion, Justice Walker stated, Aabsent a
specific request, or a mandatory statute or rule explicitly to the
contrary, specific authority does not exist requiring the proponent of hearsay
to volunteer how such hearsay is admissible prior to or contemporaneously with
proffering the evidence.@  Patterson, 980 S.W.2d at 535 (Walker,
C.J., concurring)).  This Court recently
agreed with Justice Walker and found no compelling reason to require the
proponent of hearsay testimony to provide an exception to the hearsay rule when
the trial court immediately rules in the proponent=s favor.  Ortega v. State, 126 S.W.3d 618, 620
(Tex. App.CHouston [14th Dist.] 2004, no
pet. h.).  Therefore, we find appellant=s
contention that the evidence is inadmissible because the State failed to
respond to the objection is without merit. 








We next consider appellant=s
contention that Subia=s
statements were inadmissible under the excited utterance exception to the
hearsay rule.  An excited utterance is
any Astatement
relating to a startling event or condition made while the declarant was under
the stress of excitement caused by the event or condition.@  Tex.
R. Evid. 803(2).  The critical
factor in determining if a statement is an excited utterance is whether the
declarant was Astill dominated by the emotions,
excitement, fear, or pain of the event.@  Lawton v. State, 913 S.W.2d 542, 553
(Tex. Crim. App. 1995).  It is not
dispositive that the statement is an answer to a question or that it was
separated by a period of time from the startling event.  Salazar v. State, 38 S.W.3d 141, 154
(Tex. Crim. App. 2001).  Instead, whether
the statement is in response to a question or a significant amount of time
elapsed between the event and the statement, are simply factors to consider in
determining whether the statement is admissible under the excited utterance
exception.  Id.  The element of time is an important factor,
but it is not controlling.  Fisk v.
State, 432 S.W.2d 912, 914B15 (Tex.
Crim. App. 1968); Hawkins v. State, 792 S.W.2d 491, 495 (Tex. App.CHouston
[1st Dist.] 1990, no pet.).

The trial court did not abuse its
discretion in permitting Rivera to testify to Subia=s
statements because the record supports a finding that Subia was still dominated
by the emotions and fear of the event. 
Rivera was the first officer on the scene, arriving at 3:03 p.m.,
between six and eleven minutes after being dispatched.  He arrived shortly after the shooting, while
paramedics were treating Mares.  Rivera
testified that Subia was upset, excited, and nervous.  Rivera observed Subia running around yelling
that his friend had just been shot. 
Subia later testified that he could not remember what he told Officer
Rivera because he was Apretty
messed up.@ 
The record supports the trial court=s implied
finding that Subia=s
statements to Rivera were excited utterances. 
Accordingly, appellant=s second
issue is overruled.

IV.  Admissibility of Gang Evidence








In his third issue, appellant
contends the trial court erred in permitting testimony during the punishment
phase establishing that the ARuthless
Assassins@ gang was known to commit
drive-by shootings before appellant was a member of the gang.  At trial, appellant objected to testimony
proffered by Roberto Izaguirre, a police officer with the Pasadena Police
Department, assigned to the Gang Task Force Unit in the mid-1990=s.  Officer Izaguirre testified that appellant
was a member of the Ruthless Assassins gang beginning in 1995.  When the prosecutor asked Izaguirre about the
operation of the Ruthless Assassins, he responded:  AAt that
particular time, back in >93, when
we first startedCof
course, gangs first hit Pasadena in >89.  It took until >93 to get
everything going.  But there at that time
we had a lot of drive-by shootings.@  Appellant objected to the relevancy of this
testimony because the year 1993 was not Atied to
[appellant] in this case.@  The court overruled his objection and
Izaguirre continued without objection:

By the end of >95, there was a lot of
drive-by shootings.  We had a lot of
assaults on innocent victims, school kids that perhaps did not want to be in a
gang but were being pressured into being in a gang.  There was a big territory turf war type
deal.  In certain areas of town was one
gang and another area of town was another gang. 
When these groups would clash, even in the schools sometimes, we would
have a lot of problems.  Our main focus
was to try to suppress all this, put a little pressure on them, let them know
that they were being watched.  

As the years went by, the crime
got a little more violent.  What started
off as spray painting, it ended up going to the killing of people.

 

Gang affiliation may be relevant
and admissible at the punishment stage to show the character of the accused. Beasley
v. State, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); see also Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1)
(Vernon Supp. 2004).  To prove relevance
of a defendant=s membership in an organization
or a group, the State must show: (1) proof of the group=s violent
and illegal activities; and (2) defendant=s
membership in the group.  Mason v.
State, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995).  Without this information, the jury has
nothing to conclude whether membership in the gang is a positive or negative
character trait of the defendant.  Anderson
v. State, 901 S.W.2d 946, 950 (Tex. Crim. App. 1995).  The State proved both facts through Izaguirre=s
testimony.








Evidence regarding a gang and its
activities, however, is not admissible as character evidence unless the
four-part test established by the Texas Court of Criminal Appeals in Beasley
is met.  Aguilar v. State, 29
S.W.3d 268, 270 (Tex. App.CHouston
[14th Dist.] 2000, no pet.). 
Specifically, the Beasley court held that it was not necessary to
link the accused to the bad acts or misconduct generally engaged in by gang
members so long as the jury is (1) provided with evidence of the defendant=s gang
membership; (2) provided with evidence of the character and reputation of the
gang; (3) not required to determine if the defendant committed the bad acts or
misconduct; and (4) only asked to consider reputation or character of the
accused.  Beasley, 902 S.W.2d at
457.  Appellant argues the trial court
erred in admitting evidence of drive-by shootings committed prior to appellant=s
participation in the gang because the third and fourth prongs of the
admissibility test were not met. We agree.

We conclude the first and second prongs of Beasley
were met through the testimony of Officer Izaguirre.   However, the third prong of Beasley
was not met.  When asked about the
operations of the Ruthless Assassins, Izaguirre testified to drive-by shootings
that occurred prior to appellant=s participation in the gang.  The State did not attempt to separate
appellant from those crimes.[5]  The trial court in the jury charge
specifically instructed the jury that it could consider evidence of extraneous
offenses Aonly if the extraneous crime or bad
act has been shown by the State beyond a reasonable doubt to have been
committed by the defendant or is one for which the defendant could be held
criminally responsible.@  The Court of Criminal
Appeals has analyzed evidence of purported gang affiliation and activities as
evidence of an extraneous offense.  Pondexter
v. State, 942 S.W.2d 577, 583 (Tex. Crim. App. 1996).  Therefore, by instructing the jury that it
could not consider extraneous offenses unless it found beyond a reasonable
doubt that appellant had committed the offense, the trial court improperly
instructed the jury that it could not consider the gang affiliation testimony
unless it found appellant committed the bad acts described in the testimony. 

Appellant argues the fourth prong of the Beasley test
was not satisfied because the jury was not instructed to consider the evidence
in the context of appellant=s character or reputation. 
Because the prosecutor never asked Izaguirre about the character or
reputation of appellant and there was no limiting instruction, nor charge to
the jury to limit its consideration of such testimony, the predicate for
admitting the evidence was not established. 
See Beasley,
902 S.W.2d at 457.








Harm Analysis

Having determined the trial court
erred in admitting the gang related evidence without meeting the Beasley
test, we must now conduct a harm analysis. 
Nonconstitutional errors that do not affect the substantial rights of
the defendant must be disregarded.  Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial and injurious effect or influence on the jury=s
verdict.  See King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). 
Substantial rights are not affected by the erroneous admission of
evidence if the error, after viewing the record as a whole, did not influence
the jury or had but a slight effect.  Fowler
v. State, 958 S.W.2d 853, 865 (Tex. App.CWaco
1998), aff=d, 991
S.W.2d 258 (Tex. Crim. App. 1999).  If we
have Agrave
doubts@ about
whether an error did not affect the outcome, we must treat the error as if it
did.  Id. (citing United States
v. Lane, 474 U.S. 438, 449, 106 S. Ct. 725, 732, 88 L. Ed.2d 814
(1986)).  AGrave
doubt@ means
that in the judge=s mind,
the matter is so evenly balanced that he or she feels in virtual equipoise as
to the harmlessness of the error.  Id.

Here, appellant was not harmed by
the admission of evidence of drive-by shootings that occurred prior to
appellant=s participation in the gang.  There was no danger the jury could have been
misled to believe that appellant was involved in the drive-by shootings that
occurred in 1993.  Izaguirre testified
prior to his description of the gang activities that appellant was not a
documented gang member until 1995.  After
appellant=s objection to the testimony
pertaining to 1993 gang activity was overruled, Izaguirre testified to gang
activity that occurred by the end of 1995, when appellant was a gang
member.  Izaguirre testified to assaults
on innocent victims and other acts of violence by gang members, including acts
of murder.  Appellant did not object to
the evidence pertaining to 1995. 








In considering whether
inadmissible evidence prejudiced appellant during the punishment phase, we also
look to the other evidence presented, such as prior convictions, bad acts, and
the nature of the crime committed.  See
Thorton v. State, 925 S.W.2d 7, 13B14 (Tex.
App.CTyler
1994, pet. ref=d) (stating any alleged error in
admitting gang evidence was rendered harmless in light of evidence
demonstrating violent circumstances of the crime and appellant=s prior
convictions); see also Boston v. State, 965 S.W.2d 546, 551 (Tex. App.CHouston
[14th Dist.] 1997, no pet.).  In addition
to Izaguirre, the State presented five witnesses that testified to appellant=s criminal
history, including Officer James Peeples with the Pasadena Police Department,
and Officers Brian Davis and Ryan Escalante with the Houston Police
Department.  The officers provided
details of crimes committed by appellant that led to three different felony
convictions.  Peeples testified that he
arrested appellant in March 1999 for possessing two pounds of marijuana.  Davis established the circumstances
surrounding appellant=s
aggravated assault conviction. Specifically, appellant pointed a Glock .45
semi-automatic weapon and threatened an individual outside of a club in
December 2000.  Escalante testified that
he arrested appellant in April 2001 for possession of a controlled
substance.  This evidence presented during
the punishment hearing, combined with the testimony establishing the events
surrounding Mares=s murder,
was sufficient to support the jury=s life
sentence of appellant.  Viewing the
entire record, we find the gang-related evidence did not have a substantial and
injurious effect or influence on the jury=s
decision in the punishment phase. 
Appellant=s third
issue is overruled.  

The judgment of the trial court
is affirmed.  

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum Opinion filed May 27, 2004.

Panel consists of Justices Edelman, Frost, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Mares was
arrested for outstanding traffic warrants and Subia was arrested for public
intoxication.





[2]  The State
argues Caldwell was not an accomplice as a matter of fact or as a matter of law
even though the court instructed the jury that Caldwell was an accomplice.  Because we find sufficient non-accomplice
evidence to corroborate Caldwell=s
testimony, we assume without deciding that Caldwell was an accomplice as
characterized by the trial court.





[3]  Caldwell
testified appellant informed them that the gun belonged to his cousin, who
wanted it returned.  Appellant then
exclaimed, AWe just killed somebody with that.  We had to get rid of it[.]@





[4]  It was
established at trial that ABobo@ was appellant=s
nickname.





[5]  The State
contends Izaguirre was not specifically testifying about the Ruthless Assassins
gang, but about drive-by shootings by gangs in general in the early 1990=s.  The
prosecutor, however, specifically asked Izaguirre about the operation of the
Ruthless Assassins and Izaguirre did not qualify his answer.