Jeffrey GRAVES, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–88–00239–CR.

Court of Appeals of Texas, El Paso.

Sept. 27, 1989.

---

**3.** Measured under the preponderance of the evidence standard.

Charles Louis·Roberts, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

This is an appeal from a jury conviction for inflicting injury to a child. The court assessed punishment at four years' imprisonment, probated. We reverse and render.

Appellant and his wife, Cynthia Graves, were both charged with causing bodily injury to her two-and-one-half-year-old son from her prior marriage. On December 13, 1987, the wife was in William Beaumont Army Medical Center for surgery. Appellant came to the hospital with the child. A nurse noticed unusual bruises on the child's face and head and had the child taken to the emergency room for examination. Bruises were found on the child's forehead, both temples, both cheeks, the tops of both ears, the inner portions of both upper arms and both forearms, the left hip, the left knee and the small of the back. A series of four circular bruises in a vertical pattern were observed over the sternum. A partially healed, semi-circular burn was found on the sole of the right foot. The child was examined by pediatric resident Captain Suzanne Cuda, M.D., who suspected that the injuries were intentionally inflicted and constituted child abuse. A variety of medical tests were conducted with child abuse in mind. The child appeared appropriately active, in good spirits and well nourished. Medical records indicated that routine medical care had been maintained. A bone scan disclosed no past fractures. Various blood tests were performed to determine the presence of any disorder which would render the child particularly susceptible to easy or excessive bruising. Two of the initial tests produced abnormal results, but a final series of tests led the medical staff to conclude that no such blood disorder was present. Dr. Cuda testified that the bruises varied in age from three days to two weeks old. The burn appeared to be approximately ten days old.

Mrs. Graves gave a statement to military police while in the hospital recuperating from surgery. She denied that she or her husband ever intentionally inflicted any injury on the child. Her trial testimony, as well as his, was consistent with the written statement. She stated that she, her mother and the child bruise easily. She described the boy as very active and prone to falls. The family had an early Christmas that year to comport with the natural father's possessory rights. The child was even more excited than usual with receiving a large number of new toys and had sustained a correspondingly greater number of bruises immediately prior to the December 13 hospital visit. The wife described virtually every one of the bruises and the producing incident in each case. The only bruises attributed to the Appellant were those on the tops of the ears. He and his wife testified that he was "rough-housing" with the boy and had his head between his legs. The stepfather was wearing denims and in the child's struggling to pull free, the tops of his ears were bruised by the rough material and seams. The Appellant further testified that the burn was produced by a night-light in the child's bedroom. The parents testified that they treated the bruises with cold compresses and treated the burn with an over-the-counter anaesthetic/antiseptic ointment.

The wife was charged in a five-count indictment with intentional failure to provide adequate medical care for the bruises; failure to provide adequate medical care for the burn; failure to protect the child from the stepfather (knowing of prior injury at his hands); intentionally or knowingly causing the bruises and intentionally or knowingly causing the burn. Appellant, jointly tried, was charged in two counts with intentionally or knowingly causing the bruises and intentionally or knowingly causing the burn. At the conclusion of the evidence, the trial judge directed verdicts in favor of the wife on the last two counts of

causing the bruises and burn and in favor of the Appellant on the count alleging intentional or knowing causation of the burn.

By motion for new trial affidavit and testimony of the jury foreman, it was disclosed that the jury, during deliberation, plugged in Defense Exhibit No. 21, a nightlight produced as demonstrative evidence, to ascertain the heat it generated with and without the protective shield. Based on this one-hour jury experiment, challenged on appeal as jury misconduct, the jury concluded that the wife's explanation of the burn was not credible. By the foreman's testimony, this had some effect not only on the burn counts but on the defendant's overall credibility in explaining the various injuries. On review of the statement of facts, we find that Defense Exhibit No. 21 was never introduced into evidence and should not have been delivered to the jury at all. Our disposition of the sufficiency points, however, renders it unnecessary to reach the jury misconduct issue.

Points of Error Nos. One and Two challenge the sufficiency of the evidence under count one of the indictment, that Appellant intentionally or knowingly caused bodily injury to the child by bruising him about the face and head. We find that the present record presents sufficient similarities in evidentiary development to *Pickering v. State*, 596 S.W.2d 124 (Tex.Crim. App.1980) to be guided by that opinion. In fact, while the Court of Criminal Appeals concluded that the causation evidence was insufficient in *Pickering*, that case was virtually a directed verdict of guilt compared to the record before us.

The burn evidence we discount. There was simply no evidence that the stepfather inflicted such injury in any manner, under any state of mind. The trial court correctly directed verdicts of not guilty on this injury as to both defendants. Dr. Cuda did not believe that the burn could have been produced in the manner described in the wife's pretrial statement and in the testimony presented by both husband and wife at trial. Yet, neither Dr. Cuda nor the investigating officers made any effort to examine the night-light or assess its heat-generating properties. The defense, on the other hand, presented the testimony of Brent Chatmon. Chatmon was in the U.S. Army with the stepfather and had known both defendants for approximately one year. He visited their home approximately six to seven hours each week, assisted them with transportation and occasionally acted as babysitter for the child. Chatmon testified that he was in fact the first person that the child told about the burn. He visited their home early one morning in late November or early December. The stepfather was still in bed and the mother was elsewhere in the house. The child came out of his bedroom and approached Chatmon, limping and complaining that his foot hurt. When Chatmon asked what happened, the child said "hot", took him into the bedroom and showed him the nightlight. Chatmon observed that it was still plugged in and the protective shield was lying on the floor. Chatmon advised the mother, who in turn awakened the stepfather. Chatmon saw them examine the burn and treat it as described above. Chatmon was also an eyewitness to several other incidents which purportedly caused some of the significant bruises noted by Dr. Cuda. His testimony comported with that of the Appellant and his wife. On one occasion, the child was playing with his toy dune buggy, pushing it around the floor on his knees with his hands pressing down on the top of the toy. He ran into the Christmas tree, his hands slipped and he fell forward with his chest landing on top of the toy. Chatmon saw the vertical array of bruises on the sternum. He also saw the child fall while jumping on the sofa, striking and bruising the small of his back on the wooden armrest. From her examination on December 13, Dr. Cuda concluded that the bruises were of varying ages, ranging from three to two weeks old. Other testimony indicated without conflict that Appellant was "in field" on military duty from December 7 to December 11 and was on guard duty on December 12, returning home on the morning of December 13 in time to take his wife and child to the hospital.

Additional corroborative evidence as to the child's activity level and propensity for accidental injury came from Lawrence Parcels, another frequent visitor to the Appellant's home. Chatmon and Parcels both testified that the parents were never abusive and were attentive to the child's reckless behavior and his injuries. The State offered no evidence from any quarter as to abusive treatment, beyond the interpretive testimony of Dr. Cuda, based essentially on the configuration of bruises on the child's body. Even Dr. Cuda's summary of the case reflected merely *suspicion* of child abuse. We reiterate that the medical evaluation failed to disclose any of the other classic signs of child abuse. The child appeared to be developing normally, was in good spirits, well nourished and exhibited no fear of either parent. The blood testing did initially produce two abnormal results.

The only act and resulting bruises attributable to the stepfather involved the "rough-housing" incident which led to bruises to the tips of the child's ears. Even this incident, acknowledged by both the Appellant and his wife, presents sufficient evidence as to the alleged culpable mental state and the alleged resulting bodily injury.

Points of Error Nos. One and Two are sustained.

Due to our disposition of the preceding points, the two points of error challenging the jury experiment with the night-light need not be reached. We do note, however, as indicated above, that the demonstrative night-light was never introduced into evidence and should not have been tendered to the jury. No effort was made by law enforcement or medical personnel prior to trial to evaluate the heat produced by the night-light. No effort was made to do so during the evidentiary portion of the trial by courtroom experiment. It was implicit in the testimony that the light had been on all night, yet the jury tested its temperature after only one hour of operation. Even when conducted for proper courtroom presentation, a reconstructive experiment must be carried out in a manner which comports with the operative facts otherwise in evidence. Failure to do so renders the resulting conclusion invalid as lacking relevance to the facts and issues on trial.

We also do not reach Points of Error Nos. Three and Four, challenging the sufficiency of the evidence that the manner and means of injury were unknown to the grand jury despite the exercise of diligent inquiry.

The judgment is hereby reversed, and a judgment of not guilty is hereby rendered.