Opinion filed May 17, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed May 17, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00210-CR

                                                     __________

 

                                CECIL
DERRECK CLARY, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 161st District Court

 

                                                           Ector County, Texas

 

                                                 Trial
Court Cause No. B-31,336

 



 

                                                                   O
P I N I O N

 

Cecil Derreck Clary appeals his conviction by a
jury of the offense of injury to a child. 
The jury assessed his punishment at five years in the Texas Department
of Criminal Justice, Institutional Division, probated, and a fine of
$1,000.  In a single issue on appeal,
Clary contends that the evidence is legally insufficient to support his
conviction.  We affirm.








In order to determine if the evidence is legally
sufficient, the appellate court reviews all of the evidence in the light most
favorable to the verdict and determines whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979);
Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App.
2000). 

Tammy Smith testified that she was an investigator with Child
Protective Services and investigated allegations of abuse and neglect to
children.  She indicated that, after
receiving a call on February 18, 2004, about physical abuse, she went to a
residence and remained there until police officers arrived.  She related that Clary answered the front
door and identified himself after she and a police officer knocked on the door
and told him that they were there regarding an intake involving a two-year-old
child.  She stated that, before she could
see the child, Clary raised his hand and explained what injuries the child
had.  She said that, when Clary grabbed
the child and pulled her to the front door, the child jumped toward her.  Smith testified that, after the child jumped
on her, she was grabbing her and whimpering. 
She said that, when she tried to pull the child away, she would shake
her head and say no.

Smith testified the child had two black eyes.  She indicated the left eye was a dark purple
and blue and was almost swollen shut. 
She said it looked almost like it was trying to bleed.  She described the right eye as also having a
dark bruise but that it was in a different stage of healing.  She described an adult bite mark that the
child had.  She stated that the child had
a solid bruise on her right cheek and three linear marks extending from her
cheek all the way up to her hairline. 
She testified that there was a purple bruise on the child=s left side that extended all the way
back toward her head and back behind her ear and that the tip of her ear was
purple.  She added that the top of her
forehead was brownish green and that it had swollen bumps on it.  She said the child pointed at her
bruises.  Smith testified that Clary
explained that the child had fallen off her bed.  She indicated that she saw the bed, which was
about twelve inches from the carpeted floor. 
She said that Clary also said that some of the child=s injuries had occurred in the living
room when a black and white puppy had pounced on her and knocked her into a
coffee table and couch.  She stated that
she observed the puppy, which was smaller than the child.  She related that she took the child to the
hospital and subsequently removed her from the care of her mother and Clary,
who was the child=s stepfather.  She stated that, in her opinion, the child=s injuries were not the result of an
accident.








On cross-examination, Smith acknowledged that
there was nothing to prevent the child from falling out of bed or jumping up
and down on the bed.  She further
acknowledged that there was no physical evidence linking the bite marks on the
child to Clary.  She said Clary indicated
that the family had Medicaid but that he did not think it would pay for the child=s injuries.  Smith acknowledged that she had not observed
Clary injure the child.  She stated that,
in her opinion, the child=s
bruises did not all occur on the day that she received the call and went to the
residence.

Dr. Christina Louise Carnes, a pediatrician,
testified that she examined the child in question in February 2004 at Medical Center
Hospital in Odessa. 
Dr. Carnes said her examination revealed that both of the child=s eyes were black, the left eye more
than the right.  She said that there was
swelling in addition to a bluish-purple bruise. 
She also described bruising on the back of the ear and the scalp behind
the ear.  She indicated that there was
green bruising on the forehead.  Dr.
Carnes also described a subconjunctival hemorrhage, which she said was a blood
vessel that had burst in the white part of the child=s
eye.  She said that there was a purple
bruise where there was an adult human bite mark on the child=s left cheek.  She described greenish bruising underneath
the child=s right
eye, as well as greenish-blue bruising on the child=s
neck.  She related that two red abrasions
or scratches appeared below that and that there were two penny-shaped brown
bruises on the chest.  She also described
bruising consistent with an adult human bite on the child=s arm, as well as bruises on the child=s leg. 
She testified that the bruising did not occur all in the same day and
that some could have been there up to eight to ten days.  She said that, in her opinion, the child=s injuries occurred from blunt trauma
and not from an accident or falling off of her bed.  She insisted that there was no medical
explanation for the child=s
bruises other than child abuse.  She said
that the injuries to the child, in her opinion, were serious.  She concluded that the child=s injuries were the result of physical
abuse because the bruises were at various stages of the healing process,
because there were inconsistencies between the history given and the physical
findings, and because Athey@ delayed in seeking medical help.  She acknowledged that she did not know to
whom the bite marks belonged. 

Larry Torres, an officer with the Odessa Police
Department, testified about going to the residence with Smith, the worker for
Child Protective Services.  He affirmed
that the child had bruises and bite marks and that her injuries appeared to him
to be serious.  He said that he was
advised that the child was not taken for medical treatment because there was no
money for a taxi.  He indicated that
Clary, who was not under arrest, went to the detective unit at the police
department where it was determined that he was the caretaker of the child when
she received her injuries.








Officer Torres acknowledged that Clary was
cooperative, voluntarily allowing the officer and Smith to come into his house
and voluntarily producing the child.  He
indicated that Clary not only allowed him to search the house but that he gave
him a little tour.  Officer Torres
further acknowledged that he did not know if any teeth marks on the child were
those of Clary.  Officer Torres admitted
that he did not see Clary injure the child, and he did not dispute the fact
that the injuries occurred at different times. 
Damon McGilvray, an Odessa
police officer who accompanied Officer Torres and Smith to the residence,
confirmed the child=s
injuries and acknowledged that he did not know whose teeth marks were on the
child.

Anita Todd, a criminalistics tech at the police
department, testified that the distance from the couch cushion to the living
room floor in the residence in question was sixteen inches.  She said the carpeting was plush and not worn
out.  She said the couch was all
cushioned.  She indicated that another
couch in the room had the same measurement of sixteen inches and that the
carpeting was the same under that couch. 
She indicated that the measurement from the top of the child=s mattress to the floor was seventeen
to eighteen inches.  Todd acknowledged
that a dresser that is hard with sharp edges was near the bed when she made
pictures at the residence.

Courtney Dawn Hinkle, the child=s mother, testified that on February
10, 2004, no one but Clary was taking care of her daughter.  She indicated that, when she had gone to work
that day, she had not noticed any physical injuries to the child.  She said she first saw injuries to the child
when she got home on that day.  She
indicated that she noticed more injuries to the child when she got home from
work on February 16, 2004.  She related
that Clary was also caring for the child on that date.

Hinkle testified that on February 10, when she
first observed the child=s
injuries, she saw that the right side of the child=s
face was Akind of
swollen@ and that
she had a black eye on her right side. 
She said that she did not see any more injuries to the child until
February 16, when she observed a black eye on the child=s
left side.  She indicated that the black
eye on the child=s right
side was beginning to heal a little bit. 
She related that she had not sought medical attention for the child for
the injuries on February 10 because Clary had threatened her and that she took
the threats seriously. 








Hinkle testified that on February 16 she observed
a bite mark on the child=s
arm.  She indicated that the child did
not have a habit of biting herself and that she did not bite the child
herself.  She said that the two puppies
she kept in the house were gentle with the child and that she had never seen
the dogs knock her down.  She said that,
when she returned from work on February 17, the left side of the child=s face Ahad
gotten worse.@  She stated that Clary had been the child=s caretaker on that day also.  She insisted that she had never used corporal
punishment with the child and had never given anyone else authority to do so.

When asked who besides Clary had cared for the
child between February 10 and February 18, Hinkle testified that Clary=s best friend took care of the child on
the Friday before the child was taken from her. 
She said that the child=s
injuries were the same after the friend took care of her.  She said she thought her daughter=s injuries were serious.  She acknowledged that she did not know what
happened at the house because she was at work. 









The evidence shows that the child suffered
injuries at a time when she was under Clary=s
care.  Evidence was presented showing the
unlikelihood of the injuries occurring as described by Clary.  We hold that the evidence is sufficient to
support Clary=s
conviction.  In support of his argument
that the evidence is insufficient, Clary relies upon the case of Graves v.
State, 779 S.W.2d 469 (Tex. App.CEl
Paso 1989, no pet.).  We find that case
to be distinguishable.  In Graves, evidence was presented by a child=s mother and by two witnesses outside
the family as to what caused bruises and a burn to the child.  Id.
at 470.  The evidence indicated that
the only bruise attributed to Graves was caused when the child=s ears were bruised by rough material
and seams on denims Graves was wearing as he
was Aroughhousing@ with the child.  Id.  Captain Suzanne Cuda, a physician at the Beaumont Army Medical
 Center, testified that
she suspected that the injuries were intentionally inflicted and constituted
child abuse.  Id.  In holding that the evidence in Graves was insufficient, after noting the
corroboration of the parents=
version of the child=s
injuries, the court stated that the physician only testified that she suspected
child abuse, that the child appeared to be developing normally and was in good
spirits, and that the child exhibited no fear of either parent.  In the case at bar, the child=s injuries were more extensive; the
child=s mother
offered no explanation for the child=s
injuries; Clary threatened the mother if she obtained medical care for the
child; and Clary was the only one caring for the child at the time injuries
occurred.  Although there was another caretaker
during the time period, there was evidence that the child had no visible
additional injuries during the time that she was with that caretaker.   The physician in this case affirmatively
gave her opinion that the child=s
injuries occurred from blunt trauma and not from an accident or falling off of
her bed and further insisted that there was no medical explanation for the
child=s bruises
other than child abuse.  We also note the
child=s actions
and demeanor when first picked up by the investigator from Child Protective
Services.  We overrule Clary=s sole issue on appeal.

The judgment is affirmed.

 

PER CURIAM

 

May 17, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  McCall, J.,

Strange,
J., and Hill, J.[1]











[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.